## Sargent et al. v. Davis.

A judgment against an administrator in another State is not such evidence as will authorize a judgment against the succession here. The debt must be proved by the usual evidence. *Per Curiam:* In contemplation of law there is no privity between the foreign administrator and the curator here, at least in a case where the sole property here is real estate, and as such wholly subject to the jurisdiction of this State.

Where a curator of a vacant succession fails to comply with a judgment ordering him to pay into the treasury of the State a balance remaining in his hands, he will be liable, in an action against him by the heirs, for interest on the balance from the day on which it should have been paid into the treasury.

APPEAL from the District Court of Concordia, *Farrar*, J. *Stockton*, *Steele*, and *Prentiss*, for the appellants. *R. N.* and *A. N. Ogden*, and *Shaw*, for the defendant. *H. A. Bullard*, *Stacy* and *Sparrow*, for the intervenor. The judgment of the court was pronounced by

SLIDELL, J. The plaintiffs claim as heirs of *Jonathan Thompson*, deceased. The defendant is the curator of the estate of the deceased, who was a resident of Mississippi, and died, in 1823, leaving certain real estate in this State. *Davis* was appointed curator of the sucsession in 1824. The intervenor is the surviving partner of the firm of *J. L.* and *J. E. Trask*, and in that capacity, as a creditor of *Thompson's* succession, asks that the proceeds of the real estate in the hands of the curator be paid over to him, before any thing be paid to the heirs. The claim of the intervenor will be first noticed.

From a partial transcript of the proceedings of an Orphans or Probate Court in Mississippi, it appears that, *James O. Williams*, a brother-in-law of the deceased, acting as administrator in that State of the estate of *Jonathan Thompson*, suggested to the court there that the whole of the avails of the real and personal property belonging to the intestate's estate were insufficient to pay the debts; and, under a statute of Mississippi, three commissioners were appointed to audit claims against the estate. In 1827, they made a report of claims allowed, among which is stated an account of *J. L.* and *J. E. Trask*; and at

the foot of this report is exhibited the judge's order in the following words: "Examined, allowed, confirmed, and ordered to be recorded." It is in evidence that the common law prevails in Mississippi, except so far as modified by statute. By the statute of Mississippi it appears that, when the personal estate is insufficient to pay debts, the administrator may, on publication, obtain an order of sale of lands, and his deed vests a good estate in the purchasers. Whether such an order was made does not appear. *Thompson's* heirs were absentees, the estate seems to have been insolvent, and it is admitted that no one appeared, or claimed as his heirs, until 1840.

We are of opinion that, even if the commissioners report and the judicial approval are to be considered as a judgment against the administration in Mississippi, it is not such evidence as would furnish a right of action and authorize a judgment against the succession here. In contemplation of law there is no privity between the administrator there and the curator here, in a case, at least like the present, where the sole property in Louisiana was real eastate, and, as such, wholly subject to the jurisdiction of this State. See Story's Conflict of Laws, § 522. Greenleaf on Evidence, § 544. *Border* v. *Border*, 5 Mass. 77. The debt should have been proved by the usual evidence.

But it is said that there are no other creditors before the court; that this controversy is between this creditor alone and the heirs; that the proceedings in Mississippi, by the administrator and creditors, followed by the sanction of the court, would have bound the heirs if they had made themselves known in that State, and they could have taken nothing while any part of that debt remained unpaid; that, having that effect in the State in which the judgment was rendered, it must have the same effect here, *quoad* the heirs, who come forward to claim a residuum.

In the case of *McCoy* v. *Nichols*, 4 Howard, 38, we find the High Court of Errors and Appeals of that State using the following language: "It is a rule too well settled to be controverted that, there is no privity between the real and personal representatives of a deceased person. Hence a judgment against the administrator is not evidence against the heir, where he has not been made a party to the action. Nor can the real estate be charged to satisfy such judgment. 1 Stark. 192. 1 Munford, 437. The reason of this rule is founded in wisdom, and the clearest principles of justice. The administrator takes only the personal estate; the heir takes the land. If a judgment against the former could bind the land, it would be in the power of the administrator by collusion and fraud to ruin the heir. The land in the hands of the heir cannot be made subject to the payment of debts, until the personal assets have proved insufficient. But the judgment or decree against the administrator furnishes no proof of that fact."

This opinion of a Mississippi court upon the common law and its own jurisprudence, is entitled to very great deference, and must be taken, especially in the absence of contrary authority, as expounding correctly the general doctrine. Now it is true that the case was not one arising under the statute to which we have already referred; but if we compare that statute with the general doctrine as above stated, and give the statute its full effect, we are unable to perceive how proceedings under it could be considered as affecting the heirs beyond their mere rights in the property actually reached by the proceedings of the Orphan's Court. If we disregard the imperfect exhibition of the action of the Orphan's Court which the partial transcript presents, and consider those proceedings as conclusive upon the heirs with regard to lands of the deceased in

Mississippi, it is going as far as we are permitted to go. The statute certainly is not to be supposed as having been intended not only to overthrow *in toto* the general doctrine, but also to operate extraterritorially, and make proceedings under it conclusive upon the heirs not present or cited, with regard to lands out of that State. Yet, without adopting such an interpretation, we could not arrive at the conclusion that the order of the Orphan's Court in Mississippi is binding upon the heirs in a contest for the proceeds of real estate in Louisiana, exclusively administered by a different curator here.

There being no evidence to sustain the intervenor, either as against the curator or the heirs, the judgment dismissing the intervention must be affirmed.

The plaintiffs seek to make the defendant, who is the curator of *Thompson's* succession, responsible for a large amount which they say is due to them as the heirs of *Thompson*. They ask not simply the proceeds of sales in the hands of the curator, but the present value of certain tracts of land, which they allege were illegally and fraudulently sold by the curator. It is charged that he bought several tracts at the probate sale of the succession in 1825, by interposing another person who subsequently transferred them to *Davis* in completion of a previous understanding between them. The defendant pleaded a general denial and prescription. The court below gave judgment in favor of the plaintiff for $6559 54, the balance exhibited by the curator's account, with interest from the 10th March, 1842, at which date the curator, by a decree of the Probate Court rendered contradictorily with the attorney appointed to represent the absent heirs, had been commanded to deposit the amount in the treasury of the State, as an unclaimed succession.

The judge of the court below was of opinion that, the defendant had no understanding at the time of the probate sale with the person to whom they were adjudicated, and by whom six of the seven tracts so adjudicated were soon after transferred to the defendant. After a careful consideration of the evidence, we concur with the district judge that, the charge is not established. We are of opinion, therefore, that the plaintiffs are restricted to the nett proceeds of sale in the hands of the curator, as exhibited by his accounts approved by the Court of Probates.

The court, as we have stated, allowed interest from the day on which the curator was ordered to deposit the money in the treasury of the State. This allowance is resisted by the defendant, who cites the 1141st article of the Code, by which it is declared that: "A curator of a vacant succession or of absent heirs owes no interest on the sums of money in his hands belonging to the succession which he administers, but he is forbidden from using them on his private account under the pain of dismissal, and responsibility for all damages caused thereby." The curator was bound to obey the command of the Probate Court by paying the money into the treasury; no sufficient excuse for the omission to do so has been shown, nor does it appear that the money was officially deposited in the bank. The 1196th article of the Code imposes on the curator who neglects to pay the balance into the treasury, a liability for interest from the day on which he was bound to do so. Another article (1192) provides for the *prompt* payment by the State to the heirs, when they present themselves. The heirs would receive from the State the total fund, both principal and interest, when collected. The plaintiffs are under the law entitled to the benefit of the liability thus imposed, and the default towards the State must be considered as inuring to the benefit of the heirs. An error has been made in fixing the date from which interest runs, which will be corrected. An excep-

SARGENT
*v.*
DAVIS.

tion in the early stage of this litigation was taken to the jurisdiction of the District Court; but must be considered as having been waived by the subsequent consolidation of the cases, and by the subsequent course of proceeding generally, pursued without objection on the part of the defendant. At the trial of the cause, which was before the District Court as organized under the new constitution, its jurisdiction was beyond question.

It is therefore decreed that, the judgment of the court below be so amended, as that the plaintiffs recover from the defendant the sum of $6559 84, with the interest thereon from the 10th April, 1842, until paid, and costs in the court below; the plaintiffs paying the costs of this appeal. It is further decreed that the judgment rendered against the intervenors be affirmed.