Richmond.

BREWIS AND ALS. V. LAWSON AND ALS.

December 8th, 1881.

1. PERSONAL REPRESENTATIVES—*Heirs or devisees.*—Judgment *by default* against the first, in suit to which the last are not parties, affects not the last; and is not evidence against them in suit to subject the decedent's real estate; and Code 1873, ch. 127, § 3, does not alter this rule.

2. IDEM.—The hardship, if any, of this rule may generally be obviated; especially where the demand is liquidated and the personal estate deficient, by proceeding at once in equity in same suit against both personal representative and heirs or devisees.

3. IDEM.—*Substance, not form.*—In this case, contrary to good pleading, the bill sets out only the judgment, and not the bond, as evidence of the debt; the heirs by their answer extend their defence to the debt itself, as if no judgment existed.

HELD :

This court, looking to substance rather than form, treats the case as if the bond, instead of the judgment, had been set out as the evidence of the debt. If there were no other evidence in the record of the debt, except the judgment, the creditor could have no decree against the lands descended.

4. STATUTE OF LIMITATIONS.—The bond bears date the 6th of January, 1849, and is payable on demand; action was brought on it in August, 1873, and the suit in chancery against the heirs in November, 1873.

HELD :

The statute ceased to run at the commencement of the action on the bond; and deducting the war and stay-law periods, to 1st January, 1869, the debt was not barred.

5. IDEM.—*Presumption of payment* from lapse of time is not affected by the positive bar of the statute, but may be repelled by proof, and in this case is repelled by the letters of the decedent, which are evidence against his heirs claiming under him.

6. AMENDABLE ERROR.—The reversion decreed to be sold to pay the debt is the joint property of the creditor and of the heirs; the latter should have been required to pay for redemption one-half only of the debt.

HELD :

Such error requires no reversal; the decree may be amended and affirmed.

Appeal from decree of corporation court of Alexandria, in suit of Anthony Lawson against R. M. Lawson, administrator d. b. n. c. t. a. of John Lawson, deceased, Robert Brewis, William Brewis, James Brewis Davidson, John Smith, and Mary, his wife, Thomas Davidson, Joseph Henry Taylor, and Margaret Jane Davidson, and Elizabeth Davidson.

John Lawson died in 1851 testate, leaving a widow, and giving his whole estate to his two nephews—Anthony Lawson, the plaintiff, and Thomas Anthony Brewis. The latter qualified as executor. The executor paid all the debts except the plaintiff's claim, and divided the entire remainder, except what had been assigned as dower to the widow ; and to subject the reversion of her dower is the object of this suit. Brewis, the executor, died intestate and without issue in 1870, without having made a final settlement of his administration. In 1871, Robert M. Lawson, son of Anthony, qualified as administrator d. b. n. c. t. a. of John Lawson, deceased. In August, 1873, Anthony Lawson obtained judgment against the administrator *by default* on a bond dated 6th January, 1849, for $1,800, payable on demand by the testator. A credit of $400 endorsed on the bond was overlooked by the clerk in entering the judgment. This suit was brought in November, 1873, by Anthony Lawson to enforce the judgment by a sale, subject to the dower, of the property which had been assigned for life to the widow, Isabella Lawson. The court below, after proper accounts, deducted the war interest, allowed the $400 credit on the judgment, directed a small amount in

the hands of the administrator to be paid on the judgment, and decreed the sale of the reversion in the dower to satisfy the balance. The heirs of Thomas A. Brewis, deceased, defended the suit, and in their answer set out the bond whereon the judgment was founded, extended their defence to it by pleading the statute of limitations and presumption of payment, and charged collusion between the plaintiff and the administrator. No such collusion was proved. Two letters from Thomas A. Brewis to the plaintiff were produced—one dated January 1st, 1859, and the other January 14th, 1870—in which this debt was referred to as unpaid. From this decree the heirs of Thomas A. Brewis appealed.

*Meredith & Cocke,* for the appellants.

1. A suit against heirs to subject realty in their hands cannot be brought upon a judgment obtained against the personal representative. Defendants below moved to dismiss the bill for want of equity, and this is equivalent to a demurrer. The only allegation of indebtedness is the judgment, and the only prayer is that the property assigned the widow be sold, subject to her life estate, to pay the *judgment* and costs aforesaid.

The proof of indebtedness should be confined to the allegation. The *allegata* and the *probata* should correspond. This is a primary rule. See *Mason, &c.* v. *Peters,* 1 Munf. 445–6; Angell on Limitations, 6 Ed., § 263, quoting the language of Chancellor Kent in 6 John. ch. 373–4; *Harwood* v. *Rawling's Heirs,* 4 Har. & John. 126; 41 Miss. 38–48; 4 Har. & John. p. 270; 5 Gill & J. 433; 2 Barb. Ch. pp. 392–3; 32 Penn. St. 259; 2 Hill Ch. p. 261; Martin & Yerger (Tenn.), 353; see, also, Ch. J. Marshall in *Alston* v. *Munford,* 1 Brock. p. 266, and Judge Joynes in *Robertson* v. *Wright, &c.* 17 Gratt. 540.

2. The judgment, as obtained, ought not to stand against the heirs. The administrator should have defended the action, and left it to a jury to say whether *laches* or lapse of time would not have barred the claim (see *Booker, &c.* v. *Booker, &c.,* 29 Gratt. 605); and further, to say whether the statute of limitations, if pleaded, would have been a bar. The bond was made 6th January, 1849. The statute ran from January 7, 1849, to April 11, 1861—twelve years, two months, twenty-four days. It ran from July 1, 1861, to April 5, 1865—three years, nine months, four days; because during that period Anthony Lawson and Thomas A. Brewis, the executor, both lived under the Wheeling or the Alexandria governments, and there was nothing to prevent him from suing on the bond; and it ran from January 1, 1869, to August 12, 1873—four years, six months and twelve days—in all, twenty years, six months and ten days.

The letters of Mr. Brewis would not have the effect of vitiating the plea of the statute. They spoke of a *note.* This is a *bond.* He spoke of *settling* the *note.* He did not promise *payment.* *Aylett* v. *Robinson,* 9 Leigh, 45; 6 Ga. p. 30; 23 Conn. 453. The administrator ought to have plead the statute. See *Anderson,* J., in *Seig* v. *Acord, &c.,* 21 Gratt. 369.

*John M. Johnson, C. W. Wattles,* for the appellees.

1. The first assignment of error may be well taken, but it is immaterial whether it is or not. The bill might have been demurrable, but it was not demurred to. Appellants answered it, admitted the existence of the bond, and filed a copy as an exhibit; and that answer cured the defect, and made it a bill to enforce the payment of ·John Lawson's bond out of the real estate whereof he died possessed. The heirs made all possible defences.

2. The bond was not barred when the action at law was

brought by about four years, deducting the period of the war and of the stay-law. *Pugh* v. *Russell,* 27 Gratt. 800.

3. If it had been barred, the two letters of Mr. Brewis, who was executor, legatee, and devisee of John Lawson, would have taken it out of the statute. Brewis would have been bound by his letters, and certainly his heirs claiming under him are also bound.

4. There is no proof of collusion or fraud.

BURKS, J., delivered the opinion of the court.

A judgment (by default at least) against a personal representative in a suit to which the heirs or devisees of the decedent are not parties, is not evidence against such heirs or devisees in a suit or proceeding by the creditor to subject the real estate, descended or devised, to the payment of the debt; and the reason assigned is, that there is no privity between the representative and such heirs or devisees. It was so held by this court at an early day (1810) in *Mason's Devisees* v. *Peter's Adm'r,* 1 Munf. 437, and the decision has been since repeatedly recognized as authority. See *Foster, &c.* v. *Crenshaw's Ex'ors,* 3 Munf. 520; *Chamberlayne, &c.* v. *Temple,* 2 Rand. 384, 396; *Shield's Adm'r* v. *Anderson's Ad'mr,* 3 Leigh, 729, 736; *Street's Heirs* v. *Street,* 11 Leigh, 498, 508; *Robertson and others* v. *Wright and others,* 17 Gratt. 534, 540. And Chief-Justice Marshall, in delivering the opinion of the supreme court in *Deneale* v. *Stump's Ex'ors,* 8 Peters, 531, said: "It is understood to be settled in Virginia, that no judgment against the executors can bind the heirs, or in any manner affect them. It could not be given in evidence against them. The same principle has been affirmed by the courts of other States. See *Harwood* v. *Rawling's Heirs,* 4 Har. & Johns; *Davis* v. *Green,* Id. 270; *Birely & Holtz* v. *Staley,* 5 Gill & J. 432, 453; *Sargent and others* v. *Davis,* 3 La. Ann. 353, 354; *McCoy, Adm'r* v. *Nichols and others,* 4 How.

(Miss.), 31, 38 ; *Osgood* v. *Manhattan Co.*, 3 Cowen, 612, 622; *Boykin* v. *Cook*, 61 Ala. 472.

The act of 1849 (Code of 1873, ch. 127, § 3) does not, we think, alter the rule. It makes real estate descended or devised (not charged by the will with debts) legal assets in the hands of the heirs and devisees ; but there would seem to be the same lack of privity, now as before, between the personal representative and the heir or devisee.

The rule certainly applies to a judgment by default. Whether it extends to a recovery had after a full and fair defence by the personal representative need not be decided in the present case. We prefer not to determine that question until a case arises in which the decision becomes necessary. The judgment in the case now before us is a judgment by default.

In *Chamberlayne, &c.* v. *Temple*, 2 Rand. 384, 396, Judge Green observed, that "in all cases where the question is, whether a person be a debtor or not, a judgment against him or his legal representative seems to be *prima facie* evidence of the fact, liable to be controverted upon the ground of fraud, or upon any other just ground, by any one a stranger to the judgment ; except, *perhaps*, in the case of the real and personal representatives of the same person, in which case *either the one or the other might have been sued in the first instance.*" See, also, the remarks of Chief-Justice Marshall in *Garnett, &c.* v. *Macon and others*, 6 Call. 337, 338.

In Pennsylvania a judgment against the personal representative seems to be regarded as *prima facie* evidence against the heir or devisee in a proceeding to subject the real estate. and in regard to adversary judgments, what is said by the supreme court of that State in *Sargent's Heirs* v. *Ewing* (decided in 1860), 36 Penn. St. 156, 160, abounds in good sense. "To hold," say the court, "that the creditor who has, after a severe and prolonged contest, established his right to satisfaction out of the personal assets, but finds in

the end that they are insufficient for the purpose, and that he must enter *de novo* into the same contest with the heirs; must produce anew his proofs and witnesses, perhaps scattered and lost sight of, under the expectation that they would never be needed again, is something in practice which has not been thought necessary for the last twenty years at least." See, also, *Steele* v. *Lineberger and others*, 59 Penn. St. 308; Freeman on Judgments (3d Ed.), § 163.

The inconvenience and apparent hardship of the rule, as it is understood in Virginia, may generally be obviated. In most cases, certainly in cases of liquidated demands and where there is a known deficiency of personal estate, the creditor need not proceed against the personal representative separately in the first instance, but may bring him and the heirs and devisees before the court in the same suit in equity, and thus avoid the hazard, delay, and expense of a repeated litigation of the ·same matter. This course·might have been properly and conveniently pursued in the present case, as it was obvious at the outset that a resort to the real assets would be necessary. There was no occasion for a judgment at law, which, it was known, would be unavailing against the administrator.

If the judgment of Anthony Lawson was the only evidence of his debt in the record, under the authority of the cases adjudged by our predecessors, he could have no decree against the lands devised to Thomas A. Brewis, which on his death descended to his heirs. But the bond on which the judgment was founded was brought into the cause by the heirs themselves. While they disputed the judgment, they did not question the validity of the bond, but on other grounds denied the liability of their inheritance for its payment. The bill, it is true, does not in terms refer to the bond, but to the judgment as evidence of the debt. The heirs in their answer do not confine their defence to the judgment, but extend it to the debt, of which the judg-

ment is but the evidence; and it is evident from the record that every defence was made that would have been made if the bill had been framed on the bond instead of the judgment. It would certainly have been more in accordance with the rules of good pleading, if the complainant in his bill had based his claim as against the heirs directly on the bond; but when this court sees, from the record, that the litigation was extended by the heirs themselves, without objection from the complainant, beyond the judgment to the debt itself, and that full defence was allowed and made, in like manner as if there had been no judgment, looking to substance rather than form, as courts of equity are accustomed to do, it will treat the case as if the bond, instead of the judgment, had been set out as the evidence of the debt. There was no necessity for the complainant to prove the execution of the bond, for it was virtually admitted by the answer. Besides, it was specially referred to by the commissioner, and a copy filed with his report, and was not excepted to as evidence.

As the judgment is not evidence against the heirs, it would seem to be immaterial whether it was obtained by collusion between the creditor and representative or not, except so far as such collusion, if established, might be relied on as a circumstance in aid of the other defences. The charge of fraud rests rather upon the argument of counsel than upon the record. If intended to be made in the answer, it is by inference and implication merely. It is certainly not directly and expressly made. It is averred that the son qualified as administrator; that soon after his qualification the father instituted the suit against him, and that he suffered judgment to go by default, when there were defences to the action which, if relied on, would have defeated recovery. Now, the answer does not charge that there was any fraudulent combination in the matter. It does not even aver that the father procured his son to qual-

ify, or that the latter qualified with a view to the judgment afterwards recovered, or that the failure to make defence was with a fraudulent intent, or that the son even knew of any defence to be made. On the contrary, the failure to make defence, and particularly to see that the credit endorsed on the bond was allowed in the judgment, would seem to be attributed to negligence merely. It was the fault of the clerk that the credit was not given in entering the judgment. *Rees* v. *Conococheague Bank,* 5 Rand. 326, 330. The error was patent and the credit afterwards allowed. If it was intended to charge collusion, the charge ought to have been expressly and unequivocally made. At any rate, the facts and circumstances stated should be such as to be inconsistent with an honest purpose; such as, if true, would clearly justify the inference and imputation of fraud. Neither the pleadings nor the proofs, in our judgment, warrant such inference or imputation. It was more than two years after the qualification of the administrator before suit was brought on the bond, and no defence was made because none was known to the administrator which could be successfully made, as will be manifest from a consideration of the objections urged against the allowance of the debt, independently of the judgment.

The first is, that the claim is barred by the act of limitations. Assuming that such a defence by the heirs was admissible, the act ceased to run at the commencement of the action at law. *Pugh and others* v. *Russell and others,* 27 Gratt. 789, 800; *Peck* v. *Wheaton's Heirs,* 1 Martin & Yerger (Tenn.), 353, 360. The bond bears date the 6th of January, 1849, and is payable on demand. At the time it was executed, there was no statutory limitation to our action upon it. By the Code of 1849, which took effect July 1, 1850, a limitation of twenty years was imposed to actions on such instruments entered into before the Code went into operation, the time to be computed from July 2, 1850. (See Code of 1873, ch. 146, §§ 8, 22; ch. 209, § 1.)

In making the computation, the period of the late war is to be deducted, for it is conceded that during that period the creditor resided in territory under the dominion of one of the belligerent powers, and the debtor in the territory of the other. In such case, under the rules of international law, which have been applied by the courts, State and Federal, to the late war between the States, these parties are to be considered as in the attitude of alien enemies in their relation to each other during hostilities, and the pendency of war not only interdicted all intercourse between them, but suspended all remedies for the enforcement of their contract with each other, and consequently the operation of the act of limitations. *Small's Adm'r* v. *Lumpkin's Ex'or and others*, 28 Gratt. 832, 834, 835, and cases there cited; *Hanger* v. *Abbott*, 6 Wall. 532; *Brown* v. *Hiatts*, 15 Wall. 177, 184. After the close of the war, the stay-law continued in force until the 1st day of January, 1869. The suit at law against the administrator was instituted in August, and the suit in equity against the heirs in November, 1873. Making the proper deduction of time, the act of limitations had run less than sixteen years before the institution of either of the suits. So that it is clear that the debt was not barred by the act.

But it is further insisted, that if not barred, the presumption of payment arises from the lapse of time. That the common law rule of presumption, after the lapse of twenty years from the time the right of action accrues, is not affected by the statute imposing a positive bar, and may therefore be relied on, has been decided by this court in *Booker's Adm'r* v. *Booker's Rep.*, 29 Gratt. 605. A like decision has been made by the court of appeals of West Virginia. *Hale* v. *Pack's Ex'ors*, 10 W. Va. Rep. 145. But the presumption is not conclusive. It may be repelled by satisfactory proof. It is fully repelled in the present case by the two letters of Brewis, the one dated in 1859 and the other in

1870, the latter written a few months only before his death, in both of which the debt is admitted. 2 Minor's Inst. 758, 759; 4 do., part 1st, 502, 503. It is contended that these letters are not evidence against the heirs. We are of a different opinion. At the time the letters were written, Brewis was not only executor, but also devisee under the will of John Lawson, and liable as such for his proportion of the debt to the other devisee to whom the letters were addressed. His admissions, therefore, to that devisee, bound him personally, and as they were evidence against him individually, they were in like manner evidence against those (his heirs) claiming under him. This proposition would seem too plain for controversy. The last letter was distinctly proved, and the other, offered in evidence and referred to by the commissioner in his report, was not excepted to. If it had been objected to, it would, no doubt, have been proved as the other was. At all events, the objection to it here for the first time comes too late. *Simmons* v. *Simmons' Adm'r*, 33 Gratt. 451, and cases cited.

The only error in the decree is as to amount required to be paid by the heirs to redeem the reversionary interest ordered to be sold. As this reversion is the joint property of the complainant, Anthony Lawson and the heirs, the latter should have been required to pay for redemption one-half only of the debt. This is not such error, however, as requires a reversal of the decree. The decree may be amended, and as amended reaffirmed.

It is stated by the commissioner in his report, that by the last *ex parte* settlement of the executorial accounts of Brewis, it appears that the estate of his testator was then indebted to him in a balance of $2,308.22. It is contended that the decree should have provided for the payment of this balance *pari passu* with the complainant's debt. No such claim as this is set up in the answer of heirs, nor is the personal representative of Brewis a party to the suit.

If, however, the balance is owing, it ought iu justice to be paid. And when the cause is remanded, if the heirs desire it, they may have an inquiry into this matter, and to that end the complainant may be required to amend his bill and bring the personal representative before the court, and, in the meantime, the execution of the decree affirmed by this court may be suspended until the enquiry has been made. And such will be the direction in the decree entered here.

DECREE AMENDED AND AFFIRMED.