# Richmond.

## Sipe v. Taylor and Others.

November 22, 1906.

Absent, Buchanan, J.

1. Equity—*Jurisdiction—Decree Against Surety of Purchaser—Limitation of Actions—Case in Judgment.*—In 1871 a judgment was rendered against a principal and the personal representative of his surety for a deferred payment on land sold in a suit in chancery, to which suit the surety was a *quasi* party by reason of having purchased other land sold under a decree therein. Subsequently the land for which the bond was given was resold in the chancery suit, and in 1887 process was issued in the chancery suit against the defendants in said judgment, and the chancery suit was then and several times thereafter referred to a master to ascertain the amount of the deficiency resulting from the resale, and who was bound for it and out of what assets it should be paid. So persistently did the personal representative resist the ascertainment of this deficiency and the liability of his intestate's estate therefor that the litigation lasted till 1902, when, after allowing large credits, a decree was rendered fixing the amount of the liability and directing the personal representative, out of the estate of his intestate to be administered, if so much he had, to pay the amount to the general receiver of the court. In less than a year thereafter the general receiver, under authority conferred upon him, brought this suit against the personal representative and heirs of the surety, alleging real estate descended, and asking to subject it to the payment of said decree in his favor. The chief defenses set up by the defendants were that the Circuit Court was without jurisdiction to enter the decree in 1902 in the chancery suit against the personal representative of the surety of the purchaser, and that the claim was barred by the act of limitations contained in section 2920, providing that a right of action against the estate of a decedent which accrues after his death shall not continue longer than five years after its accrual.

*Held:* The liability of the surety was established by the judgment

at law, and the Circuit Court had jurisdiction to render the decree against the personal representative of the surety, and that decree settled all questions as to the validity of the debt claimed, and that the debt was not then barred by the statute of limitations; nor is it now barred, as this suit was brought within less than a year after the date of the decree. The judgment in 1871 established the demand against the surety's estate, and nearly all of the subsequent delays have been occasioned by the efforts of this personal representative to resist liability for it.

2. JUDICIAL SALES—*Departure from Terms of Sale—Objection—Confirmation.*—Although a judicial sale be made on terms differing from the decree of sale, the irregularity is cured by the confirmation of the sale, and gives it the same effect and validity as if originally authorized. If a surety for a purchaser who is a *quasi* party to the suit objects to any change in terms of sale the objection must be made before confirmation. The objection comes too late afterwards.

3. APPLICATION OF PAYMENTS.—If neither debtor nor creditor gives direction as to the application of a payment, and there is no peculiar fact to aid the court in making the application, it will be applied, in the interest of the creditor, to the debt least secured.

4. SUBROGATION—*Principal and Surety.*—A surety cannot be subrogated to the securities held by the creditor until the latter has been fully satisfied.

5. VENDOR AND PURCHASER—*Security for Purchase Money—Subrogation.*—Where a purchaser of land gives to his vendor an order on a third person for the purchase price, and accepts a deed but fails to record it, and the vendor buys other land and transfers said order in part payment therefor, and gives a bond with surety for a part of the residue of the purchase price, and thereafter, but before said deed is recorded, judgment is recovered against the principal and surety on said bond, if the order is collected and the proceeds applied towards the payment of the purchase money for which it was assigned, the land for the payment of which the order was given cannot thereafter be subjected to the payment of the judgment for the relief of the surety.

6. LACHES—*Estoppel.*—The personal representative and heirs of a surety will not be heard to assert the defense of laches where the delay has been occasioned by the resistance of said personal representative to the collection of the debt, resulting in reducing the amount of the recovery several thousand dollars.

Appeal from a decree of the Circuit Court of Rockingham

county in a suit in chancery.  Decree for defendants.  Complainant appeals.

*Reversed.*

The opinion states the case.

*John E. Roller* and *Sipe & Harris,* for the appellant.

*Harnsberger & Harnsberger,* for the appellees.

Cardwell, J., delivered the opinion of the Court.

The decree brought under review by this appeal is the sequel of a long-drawn-out litigation as to the liability of Zachariah Taylor, as surety for purchasers of real estate sold under the decree of the Circuit Court of Rockingham county in a chancery cause instituted in the year 1869, or prior thereto, having for its object the marshaling of the assets of the estate of Joseph H. Conrad, who died in 1861, and the application of these assets to the decedent's debts.

In the chancery cause referred to, styled *Baugher's Admr.* v. *Conrad's Admr.,* a decree was entered in October, 1869, appointing certain commissioners to sell the lands of Joseph H. Conrad, deceased; and on the 22d of April, 1870, these commissioners sold, among other lands, a two-thirds' interest in what was known as the "Fudge" tract, to J. M., William H., A. F. and V. H. Lam, at the price of $8,303, the purchasers making provision for the cash payment of one-fourth of the purchase money, and executing their three bonds, each in the sum of $2,075, for the residue, these bonds falling due, respectively, at one, two and three years from the day of sale.  Upon the first of these bonds Zachariah Taylor became co-obligor with the purchasers, as their surety.

Thereafter, at the August term, 1871, of the County Court of Rockingham county, Zachariah Taylor having departed this life, a judgment was rendered on the bond upon which he was

surety in favor of Walker and Compton, two of the commissioners (the other one having died), who made the sale referred to, against the Lams, and a separate judgment against John W. Taylor and Hiram H. Taylor, administrators of Zachariah Taylor, deceased; and subsequently, on the 23d of February, 1873, after proper proceedings for the purpose, the said real estate was resold for the unpaid purchase money due thereon, and the said John W. Taylor became the purchaser thereof at the price of $21.60 per acre, thereby leaving a deficiency of approximately $4,000 on the purchase price agreed to be paid by the Lams at the first sale. Thereupon a litigation arose between the Lams and John W. Taylor as to who was the real purchaser at said resale, which was not terminated until 1882, as well as between the creditors of Joseph H. Conrad, whose debts were liens upon the lands, and, of course, upon the fund arising from the sale thereof; and notably between the personal representatives of Zachariah Taylor, deceased, as to the amount of the deficiency and the liability of the estate of Zachariah Taylor, deceased, therefor on account of his suretyship in said first bond of $2,075; and so persistently did the personal representatives of Zachariah Taylor resist the ascertainment of this deficiency and the liability of Zachariah Taylor's estate therefor, that the litigation lasted until the year 1902, when a decree was entered in the cause, adjudging the liability of the estate of Zachariah Taylor, by reason of his suretyship as aforesaid, to be the sum of $2,963.33, with interest on $1,040.02 from the 24th of September, 1902, and the sum of $223.83 costs, after allowing the estate a very large but disputed credit claimed by the personal representatives, thereby relieving the estate of nearly $4,000 asserted against it.

Upon a report being made of the first sale of the "Fudge" tract of land, it was confirmed to the Lams, and after the resale of the land to John W. Taylor a controversy between him and the Lams originated and continued, as stated, for a number of years. After the termination of this controversy and the com-

pletion by Taylor of the payment of his purchase price on September 1, 1886, a decree was entered in the cause on the 21st of April, 1887, directing process to issue against the Lams and their assignee in bankruptcy, and the personal representatives of Zachariah Taylor, deceased, and further directing that "when the cause matures as to these defendants, it shall stand referred to Commissioner Bryan, with instructions to examine, state and settle (1) an account showing the deficiency, if any there be, arising from the sale of the 'Fudge' tract to the Lams, and the resale because of the failure of the purchasers to pay for the same; (2) who are bound for said deficiency, and out of what assets the same ought to be paid."

In response to this decree, Commissioner Bryan made and returned his report on the 28th of April, 1890, wherein he ascertained the deficiency and reported that the estate of Zachariah Taylor was liable for any balance remaining unpaid on the first deferred payment, under certain conditions set out in the report. Thereafter the cause was four times referred to Commissioner Liggett, he being engaged at that time in taking the account in a certain other chancery cause, entitled *Bruce* v. *Dovel,* with direction to report upon the same matters required to be considered by Commissioner Bryan.

In response to each of these references to him, Commissioner Liggett made full and lucid reports upon all the questions presented for consideration; and by his fourth report, filed on the 24th of September, 1902, he ascertained and reported that the amount due upon the judgment on the bond in which Zachariah Taylor was surety was, as above mentioned, $2,963.33, with interest on $1,040.02 from September 25, 1902, and $223.83 costs. Upon this report the Circuit Court made its decree overruling all exceptions thereto, and approving and confirming the report; and further adjudged and ordered that the personal representatives of the estate of Zachariah Taylor, deceased, pay out of the assets of the estate of their intestate in their hands to be administered, if any there be, to George E. Sipe, general

receiver of the court, the amount ascertained to be due as above stated, and that unless the recovery authorized by the decree should be paid to Sipe, general receiver, within thirty days from the rising of the court, he should institute such proceedings as he might be advised to enforce payment of said recovery.

After fruitless endeavors on the part of Sipe, general receiver, to collect said recovery from the personal representatives of Zachariah Taylor, deceased, he, in obedience to the directions of the decree of the court, in May, 1903, instituted this suit in the Circuit Court of Rockingham county against John W. Taylor, H. H. Taylor and Joseph F. Taylor, heirs at law of Zachariah Taylor, deceased, and the said John W. Taylor and H.'H. Taylor, as the personal representatives of Zachariah Taylor, deceased, alleging in his bill that the heirs of Zachariah Taylor, deceased, named, had received from their ancestor and still own real estate of very considerable value, and that this real estate was assets for the payment of the decedent's debts, and charging that this real estate in the hands of the heirs at law of Zachariah Taylor was liable for the recovery authorized by the decree of the court, above mentioned; and praying that the said parties be made defendants to the bill, and that all proper accounts might be taken, especially an account of the indebtedness against the estate of Zachariah Taylor, what assets of his estate, real and personal, are liable for the payment of the said recovery, in whose hands they are, and who was liable therefor, etc.

To this bill the parties defendant filed their answers, as heirs at law and as the personal representatives of Zachariah Taylor, deceased, respectively, accompanying the answers with voluminous exhibits; whereupon such proceedings were had that the cause came on to be heard on the 7th day of April, 1905, on the complainant's bill and the exhibits and answers aforesaid, the documentary evidence filed, including as much of the records in the causes of *Bruce* v. *Dovel,* and *Baugher* v. *Conrad,* as was pertinent, and upon consideration thereof the Circuit Court

entered the decree here under review, dismissing complainant's bill with costs.

The first question presented is whether, under the circumstances disclosed by the record, the heirs at law of Zachariah Taylor, deceased, were exonerated from the payment of their ancestor's debt asserted by reason of the statute of limitations.

In the recent case of *Turk* v. *Ritchie,* 104 Va. 587, 52 S. E. 339, the facts and circumstances relied on to defeat the recovery of the debt asserted were very similar to the facts and circumstances disclosed in this record, and the same legal defenses made that have been urged against the recovery sought in this cause, viz: that the Circuit Court of Rockingham county was without jurisdiction to enter the decree of the 7th day of November, 1902, in the cause of *Baugher* v. *Conrad* against the personal representatives of Zachariah Taylor, deceased, for the amount due on the bond of the Lams in which Zachariah Taylor was surety; and that under section 2920 of the Code of 1887, providing that a right of action against the estate of a decedent which accrues after the decedent's death shall not continue longer than five years after its accrual, a recovery of the debt asserted is barred.

In *Turk* v. *Ritchie, supra,* the bill alleged the execution of a bond by a principal and sureties, the death of the principal and sureties, and that the orator and oratrix were entitled to have the sum due paid over by the personal representatives, heirs and distributees of the principal and of the sureties, parties defendant, specifically praying that the personal estate of the principal and certain land covered by a deed of trust securing the debt be applied to the payment of the debt, and concluding with a prayer for geenral relief: Held, that the allegations of the bill conferred upon the court jurisdiction to render a decree against the personal representatives of the sureties under the prayer for general relief. In that case there had been no opportunity as argued, for the personal representatives of the deceased sureties to set up their defense in a proceeding at law or for a

trial by jury; while in the case here Taylor's personal repre-
sentatives had both the opportunity to set up their defense as
the personal representatives of the surety, Zachariah Taylor, in
a proceeding at law and for a trial by a jury. But it was, never-
theless, held in the first-named case that the decree against the
personal representatives of the surety was a valid decree, the
decision being founded upon the fact that Turk's personal repre-
sentatives were put on notice of the liability asserted against
them in the chancery cause, and the decree over against them
was not inconsistent with the case made in the bill, but was in
conformity with the principle that when a court of equity ac-
quires jurisdiction of a cause for one purpose it will retain it
and do complete justice between the parties, enforcing, if neces-
sary, legal rights and applying legal remedies to accomplish that
end, citing a number of authorities.

The decision in that case is conclusive of the question here,
whether or not the decree over against the personal representa-
tives of Zachariah Taylor, entered in *Baugher* v. *Conrad* on
the 7th of November, 1902, is valid, the case here being stronger
against these personal representatives than was the case of *Turk*
v. *Ritchie,* for the reason that the judgment at law on the pur-
chase money bond in which Zachariah Taylor was surety was
not only notice to his personal representatives of the liability
asserted against the estate of their intestate, but they were parties
to the cause of *Baugher* v. *Conrad,* and had full notice of all
proceedings therein to ascertain and determine the liability of
the estate of Zachariah Taylor for said judgment.

It could not be denied that the judgment rendered in August,
1871, against the personal representatives of Zachariah Taylor
could be enforced at any time within twenty years from the date
of the judgment, and the bond having been merged in the judg-
ment and execution having issued thereon, it is clear that the
judgment remained in force for twenty years. It is true that
thirty-two years elapsed before the heirs at law of Zachariah
Taylor were impleaded, but this lapse of time in no way affects

the validity of the decree of November 7, 1902. *Turk* v. *Ritchie, supra.*

The reports of Commissioner Liggett state clearly and logically facts to show that the statute of limitations running against the judgment rendered in August, 1871, against the personal representatives of Zachariah Taylor, was suspended, and necessarily so, in order to correctly and definitely ascertain the liability upon Zachariah Taylor's estate by reason of his suretyship in the bond upon which this judgment was rendered for a sufficient length of time to make the judgment a living and valid one, enforceable against the heirs of Zachariah Taylor when this suit was instituted.

It could not be contended that the statute of limitations has been running against the judgment of 1871 since the decree of April, 1887.

In *Turk* v. *Ritchie, supra,* it is said: "The decree asserted by appellee being a valid decree it settles all questions as to the validity of the debt claimed, and that the debt was not barred by the statute of limitations when the decree was made." Citing *Brewis* v. *Lawson,* 76 Va. 36, and *Smith* v. *Moore,* 102 Va. 260, 46 S. E. 326.

The facts stated in Commissioner Liggett's reports show clearly that the appellees here have no cause to complain of delay in ascertaining the liability asserted against their intestate's estate in *Baugher* v. *Conrad,* because of the fact that the proceedings causing the delay were not only brought about by the action of Taylor's personal representatives, but resulted in reducing the liability now asserted against appellees by several thousand dollars.

It is contended, however, that the proviso to section 2920 of the Code, limiting the time within which any claim may be proved against the estate of a decedent to five years from the qualification of his personal representative, whether the right of action accrued before or after his death, applies to the case

here, because the heirs could only have been sued upon the original claim.

This contention cannot be sustained for the reason that the judgment was obtained, and the claim thereby proved, against Zachariah Taylor's estate in August, 1871. If this construction of the statute contended for could be maintained, then a judgment against a personal representative on a decedent's debt may be good for twenty years against the personal estate and good for only five years as against the heirs at law. This question was settled in *Turk* v. *Ritchie,* wherein it was held that the claim having been asserted against Turk's devisees within three and one-half years after the rendition of the decree of December 10, 1895, into which the right of action on the original debt was merged, the proviso of the section could have no application. In this case the decree of November 7, 1902, was asserted within one year from its rendition, viz: in May, 1903, and this decree was conclusive of the question whether or not the debt was barred by the statute of limitations as against the estate of Zachariah Taylor; therefore, the proviso to section 2920 of the Code has no application to the case.

It is contended, however, by appellees, who, as is admitted, received real estate as heirs at law of their father, Zachariah Taylor, liable for his debts, that Zachariah Taylor's estate is discharged from the debt asserted in this case, because the contract of suretyship was changed without his knowledge or consent, and to his prejudice.

This contention is not sustained by the record. There was no change in the terms of the sale made to the Lams of the "Fudge" tract of land without the knowledge or consent and to the prejudice of Zachariah Taylor. He was himself a purchaser of a portion of the property sold by the commissioners at the same sale at which the Lams made their purchase, thereby becoming a *quasi* party to the suit, which purchase was confirmed to him by decree of the 31st day of May, 1870, the same decree by which the sale to the Lams was confirmed, "provided the said

purchasers comply with the terms of sale by paying one-fourth cash and executing their bonds with approved security . . . but if any of the purchasers fail to comply with the terms of sale within ninety days from this date, then the commissioners are authorized to resell the property." In a subsequent report of the commissioners they reported that Zachariah Taylor had executed his bonds with surety for the purchase made by him, and that the Lams had executed their bonds with surety on one of them, and had made arrangements in regard to the cash payment, and that the surety on the one bond of the Lams—the bond for the first deferred payment—was Zachariah Taylor himself; and this report was confirmed by decree of September 20, 1870.

In *Robertson* v. *Smith,* 94 Va. 250, 26 S. E. 579, 64 Am. St. Rep. 723, it was held that "Though a judicial sale be made on terms differing from those prescribed by the decree of sale, yet the confirmation of the report of sale cures the irregularity and gives the sale the same validity and effect as if made upon the precise terms of the decree."

But, say appellees, the cash payment, due from the Lams, was not paid in money, but by an order on Dovel's estate for $3,000, given by Mrs. Burkett to the Lams, accepted by Dovel's executors, and transferred by the Lams to the special receiver in the cause of *Baugher* v. *Conrad,* and no personal surety was taken for the second and third deferred payments of the Lams' purchase of the "Fudge" tract; therefore the terms of the sale were so varied without the knowledge or consent of Zachariah Taylor, and to his prejudice, that he is exonerated, at least to the extent that he is damnified.

While a surety has a right to stand upon the very terms of his contract, and if he does not assent to any variation when the variation is made it is fatal, the rule cannot apply to this case. The variances in the terms complained of, even if material, were matters which should have been brought forward by

Vol. cvi—31

Zachariah Taylor, appellees' ancestor, before the confirmation of the sale to the Lams, as we have heretofore shown.

The further contention is made that as the Burkett order for $3,000, turned over by the Lams to the commissioners to be collected and applied on their purchase money, was greatly in excess of the cash payment due from the Lams, the excess being $995.84 as of May 19, 1870, this excess should have been applied to the bond in which Zachariah Taylor was surety and to the exoneration of the surety to that amount.

The Burkett order referred to was taken by the commissioners who made the first sale of the "Fudge" land to the Lams, given by Mrs. Burkett in favor of the Lams, for $3,000, to be paid out of funds coming to Mrs. Burkett in the suit of *Bruce* v. *Dovel*, pending also in the Circuit Court of Rockingham county, the amount thereof when collected to be applied by the commissioners to the payment of the purchase money owing by the Lams for the "Fudge" land. There is no sufficient proof in this record of any valid agreement or understanding between the commissioners and the Lams, or any one else, that any part of the money when collected on the Burkett order was to be applied to the payment of the bond in which Zachariah Taylor was surety for the Lams. It was doubtless due to the fact that the commissioners considered that this order, together with the land purchased by the Lams, the title to which was retained as security for the unpaid purchase money, made it unnecessary to require of the Lams personal security for the deferred payments of their purchase money other than the first, and their action in not requiring personal security for the second and third deferred payments was approved and ratified by the court, with Zachariah Taylor before the court as a *quasi* party to the cause in which the Lams made their purchase. Here there had been the failure of both debtor and creditor to exercise their confessed right to direct the application of the proceeds of the Burkett order when collected, whereby the court was left without any peculiar fact to aid its discretion in applying the money

to the discharge of the Lams' indebtedness in the cause, and in accordance with the well established rule governing in such a case the court rightly applied it to that part of this indebtedness which was the least secured, or, in other words, in the interest of the creditor. *Pope* v. *Transparent Ice Co.,* 91 Va. 79, 20 S. E. 940, and authorities cited.

The doctrine of subrogation invoked by appellees has no application whatever to the case. Zachariah Taylor has himself paid no part of the indebtedness of the Lams for the "Fudge" land.

"Even if a surety is liable for only a part of the debt, and pays that part for which he is liable, he cannot be subrogated to the securities held by the creditor until the whole demand of the creditor is satisfied. . . . " Sheldon on Subrogation (2d Ed.), section 127; *Grubbs* v. *Wysor,* 32 Gratt. 127.

The Burkett order was given by Mrs. Burket for the purchase money for a parcel of land which she bought from the Lams at the time the order was given, but she failed to record her deed of conveyance of the land until after the judgment in favor of the commissioners of the court in *Baugher* v. *Conrad* against the Lams and Taylor's personal representatives, at the August term, 1871, of the County Court of Rockingham county, above spoken of, had been obtained; and the contention is made here that although the amount of this order had been collected and applied to the purchase money due by the Lams for the "Fudge" tract of land in the suit of *Baugher* v. *Conrad,* the judgment in favor of the commissioners of the court in that suit should have been enforced against the lands so purchased by Mrs. Burkett for the exoneration of Zachariah Taylor's estate from that judgment. It could not be reasonably expected that a court of equity would take the value of the land purchased by Mrs. Burkett and also subject the land to the payment of the debt, to the discharge of which the value of the land had already been applied. No authority in support of this proposition has been cited, and none can be found, so far as we are advised.

The further contention is made that by a proper application of the moneys collected for and on account of the Lams' purchase of the "Fudge" tract of land, the bond in which Zachariah Taylor was surety for them has been fully paid; but we deem it unnecessary to enter into a discussion of this contention, as we can find nothing in the record to sustain it. This was a matter most carefully considered by Commissioner Liggett in making up his report of the amount still due from the estate of Zachariah Taylor by reason of his suretyship, which was confirmed by the court and made the basis of the decree of November 7, 1902.

With reference to the last contention of appellee that the estate of Zachariah Taylor is discharged from all liability upon the bond of the Lams, in which Zachariah Taylor was surety, because of the laches on the part of his creditors, we need only repeat that the delay in ascertaining finally and conclusively the amount of the liability of Zachariah Taylor's estate was due to the resistance of the collection of the judgment against the Lams and Taylor's personal representatives, rendered in August, 1871, resulting in reducing the amount recoverable on that judgment between three and four thousand dollars. Under these circumstances appellees cannot be heard to complain of delay in enforcing the judgment. *Turk* v. *Ritchie, supra.*

It follows that the decree appealed from must be reversed and annulled, and the cause remanded for further proceedings therein not inconsistent with the views expressed in this opinion.

*Reversed.*