GARLAND M. LAYTON, ET AL.

V.

SEAWALL ENTERPRISES, INC., ET AL.

Record No. 821569

June 13, 1986

Present: All the Justices

*J. Cameron Mann* for appellants.
*James M. Pickrell (Wayne Lustig; Kellam, Pickrell & Lawler,*
on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this appeal, we deal with application of the Rules of Court relating to equity practice and procedure. Specifically, we consider whether the trial court properly allowed litigation of a claim by new parties who intervened in a pending case. Rule 2:15, as pertinent here, provides: "A new party may by petition filed by leave of court assert any claim or defense germane to the subject matter of the suit."

In 1978, numerous owners of residential property fronting on the north side of Lauderdale Avenue in Virginia Beach became concerned that development would occur directly across the street within a ten-foot strip of vacant land lying between Lauderdale and the edge of a lake located south of the street. One of the property owners, appellant B. Frank Williamson, asked an adjacent owner, appellant Garland M. Layton, an attorney-at-law, to advise interested neighbors how the strip could be kept in its natural state. Upon investigation, Layton concluded that the strip had been owned by a dissolved corporation, Chesapeake Seashore Corporation, and that the property had not been disposed of at the time of dissolution in 1913. He recommended that Williamson acquire title to the property.

In July 1978, Layton, as attorney for Williamson, filed a petition in the court below for appointment of a receiver for Chesapeake Seashore Corporation. Following report of a commissioner in chancery, the court appointed Layton receiver for the corporation and, in an October 1978 order, authorized Layton to convey the property to Williamson. Williamson, an employee of the City of Virginia Beach, planned to interest the City in purchasing the property as well as the lake. To avoid the appearance of a conflict of interest, Williamson, upon Layton's advice, conveyed the property, except the portion directly in front of Williamson's residence, to appellant John Koren, Layton's son-in-law and legal assistant.

Subsequently, the suit giving rise to the present controversy was initiated below. In December 1979, appellee Seawall Enterprises, Inc. filed a bill of complaint against Layton, individually, Williamson, and Koren. Seawall claimed title to the property in ques-

tion through a series of conveyances originating with the defunct Chesapeake Seashore Corporation.

Seawall alleged that, when the prior suit was filed, Layton knew, or should have known, that the subject property previously had been conveyed lawfully to others and that Layton "did commit what was tantamount to fraud upon . . . Williamson . . . and the Court in causing the appointment of a receiver" for the defunct corporation. Asserting that its title to the property had been "placed in doubt" by the actions stemming from the receivership, Seawall asked the court: to decree that it had fee simple title to the property in question; to declare the deed of the receiver to Williamson and the deed from Williamson to Koren "null and void and of no effect;" and to "enter such other and further decrees which may be necessary to clear title to the property in question" to Seawall. The bill also included a prayer for general relief, "such other and further relief as the nature of its case may require or to equity shall seem meet." See Rule 2:2.

Following an August 1980 ore tenus hearing, the chancellor issued a memorandum opinion dated November 19, 1980. Stating that the "issue in this case" was the meaning of certain language in a 1913 deed from Chesapeake Seashore Corporation, the court decided that Seawall had not acquired title to the subject property through the chain of title upon which it had relied.

Commenting further, the chancellor stated that "this conclusion does not completely resolve the disposition of this matter." The judge noted the request that the two deeds be declared null and void because of the alleged fraud upon Williamson and the court. After recounting the events in the receivership and noting Layton's participation in the proceeding which affected property owned by Layton individually, the chancellor said: "Layton's acts may have violated his duty as an officer of the Court, and the deed may, therefore, be voidable." The court also said that "no allegation of Layton's breach of a duty to the Court was expressly stated in the plaintiff's Bill of Complaint and has not been fully addressed in argument." Thus, the court said, it "may be necessary" for the bill to be amended and for "further proceedings" to be had "before this issue can be properly decided." No order has been entered upon the chancellor's ruling that Seawall failed to establish title to the subject property.

Within two weeks, appellees Clifton W. Golden and Erma Alice Golden lodged with the clerk in December 1980 a Notice of Peti-

tion to Intervene in the pending Seawall suit. By order entered in October 1981, over the objection of Layton, the trial court granted leave to the Goldens, as interveners, to file their petition and to add appellant Layton, in his representative capacity as Receiver for Chesapeake Seashore Corporation, as a party defendant in the pending suit.

In their petition, the interveners asserted they owned property in a different subdivision block but near the land of Layton and Williamson in the vicinity of the lake and ten-foot strip. They alleged their property "was the subject" of the pending Seawall suit and apparently claimed that Williamson's title was a cloud upon their title. In addition, the interveners alleged, referring to the trial court's memorandum opinion, that because of the "interest" of the receiver, the deeds to Williamson and to Koren should be declared null and void. The interveners asked the court to: confirm the ruling that Seawall did not acquire the strip, which actually surrounds the lake; set aside the deeds to Williamson and Koren; and decree that the defunct corporation has no title to the strip. The Goldens also included a prayer for general relief.

After overruling demurrers and motions to strike the intervening petition, the chancellor held another ore tenus hearing in June 1982. This hearing focused upon the propriety of Layton's conduct as receiver in view of his position as an interested property owner. The petitioners did not rely on allegations that Layton was guilty of "fraud and deceit." It will be remembered that, in the original bill, Seawall alleged Layton's conduct "was tantamount to fraud." Rather, the inquiry was directed to Layton's alleged conflict of interest or violation of fiduciary duty. Only Layton, Williamson, and Koren testified. No evidence was presented in support of the Goldens' assertion of title.

Following the hearing, the chancellor ruled from the bench that the receivership proceedings were intended, in part, to benefit Layton individually and that his acts as receiver "represented a breach of his fiduciary obligation." The court ruled that Layton be removed as receiver, that the deeds to Williamson and to Koren (as well as a third, unrecorded deed of the property from Koren back to Williamson) be declared void, and that a new receiver be appointed. We granted this appeal from the June 1982 decree entered upon those rulings.

We agree with the contention made on appeal, as in the trial court, by counsel for the receiver that the court below abused

its discretion by permitting the intervening petition to be filed, by ordering a new party to be added to the pending suit, and by allowing litigation in the pending suit of the issues raised in the intervening petition.

■ Even though leave to amend should be granted liberally by the trial court in furtherance of the ends of justice, Rule 1:8, a new party may not intervene and assert a claim in a pending suit unless the claim is "germane to the subject matter of the suit." Rule 2:15. In order for a stranger to become a party by intervention, he must "*assert some right involved in the suit.*" Lile's Equity Pleading and Practice at 91 (3rd ed. 1952).

■ We hold that the claim asserted by the interveners was not "germane" to the subject matter of the Seawall suit, within the meaning of Rule 2:15. Stated differently, we conclude that the interveners did not "assert some right" that was involved in the pending suit. The gravamen of Seawall's suit was a claim of title to the subject property. In the 1980 hearing, the chancellor focused on that claim by undertaking to interpret language in a 1913 deed. Once the court determined as a matter of fact from the evidence that Seawall had not established title to the property, that suit should have been terminated. Resolution of the question whether the deeds to Williamson and Koren constituted a cloud upon Seawall's title was rendered unnecessary, irrelevant, and moot when it was determined that Seawall did not have a valid claim of title to the property in the first place. Decision of an irrelevant, unnecessary, and moot issue is not proper even though the bill of complaint includes a prayer for general relief. *See Woolfolk v. Graves*, 113 Va. 182, 196, 69 S.E. 1039, 1044-45 (1911) (under prayer for general relief, relief granted must be consistent with the specific relief sought).

■ Nevertheless, taking cue from the chancellor's invitation issued in the memorandum opinion for amendment and "further proceedings" to investigate the receiver's conduct, the interveners sought to assert title to separate property that merely was located in the same general area as the property claimed by Seawall. These strangers to the pending litigation claimed a link to the Seawall suit by relying on the court's intimation of its views on the validity of the Williamson and Koren deeds, an issue, as we have said, that turned out to be beyond the scope of the main suit. Thus, while recognizing that rules of equity practice are more elastic than rules at law, we nonetheless are of opinion that the

connection between the subject matter of the main case and the intervening petition was too attenuated and indirect for the latter to be germane to the former.

Accordingly, we will reverse the June 1982 decree, dismiss the intervening petition, and remand the case to the trial court with direction that a final decree be entered dismissing the original bill of complaint based on the failure of Seawall to establish title to the subject property, as decided in the trial court's November 1980 memorandum opinion.

*Reversed and remanded.*