RICHARD B. WRIGHT, JR.

V.

JOHN G. CASTLES, ET AL.

Record No. 830878

October 10, 1986

Present: All the Justices

*Matthew B. Murray (Joseph W. Richmond; Richmond and Fisburne*, on brief), for appellant.

*W. F. Drewry Gallalee (William D. Bayliss; Browder, Russell, Morris and Butcher, P.C.*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This appeal involves the *res judicata* effect of a chancery cause for injunctive relief on a subsequent action at law for compensatory and punitive damages. The same events gave rise to both proceedings.

The present case is an action at law brought in 1982 by Richard B. Wright, Jr., owner of Clare Mont Farm, against John G. and Dorothy T. Castles (collectively, Castles), owners of Santee Farm, a property adjoining Clare Mont Farm. In his motion for judgment, Wright alleged first that Castles falsely and maliciously slandered his title on several occasions by interfering with the use of Santee Park Road, a right of way across Santee Farm to Clare Mont Farm.

Wright next alleged that Castles wrongfully and tortiously interfered with the consummation of a contract by telling a potential buyer of Clare Mont Farm the right of way could not be used for heavy hauling such as fuel trucks. Finally, Wright requested $58,950 in compensatory damages and $500,000 in punitive damages. Castles filed a plea of *res judicata* based on a prior equity proceeding. The trial court sustained the plea and dismissed the action for damages with prejudice.

In the previous chancery cause, Wright sought to enjoin John G. Castles from interfering with Wright's use of the road. Castles had erected a large sign at the entrance of the right of way stating that heavy hauling was prohibited over Santee Park Road.

Wright's bill of complaint asserted a right to injunctive relief based on the equitable doctrines of estoppel, waiver, and laches. In his bill, Wright also prayed for "such other and further relief in the premises as the nature of the case may require or to equity may seem meet." The bill contained no prayer for an assessment of damages.

Evidence in the chancery cause was heard *ore tenus*. The evidence showed that the original deed to the predecessor in title of both Wright and Castles created two rights of way through Santee Farm to Clare Mont Farm, one of which was Santee Park

Road. The original conveyance also contained a restrictive covenant prohibiting heavy hauling over Santee Park Road. However, when Wright bought Clare Mont Farm in early 1963, Santee Park Road was the only usable ingress to and egress from Clare Mont Farm.

Immediately after Wright bought the property, Castles advised him that previous Clare Mont Farm owners had used Santee Park Road for heavy hauling in violation of the restrictive covenant, and Castles had not complained. However, Castles said he now wished to reach an agreement with Wright concerning the road's use and maintenance. Although the parties made no agreement, Wright continued to use the road for all purposes with no complaint from Castles until 1978.

The evidence showed that Castles first erected the sign in 1978 after Wright moved from Clare Mont Farm and listed the property for sale. During the winter of 1978-79, Castles prevented a fuel truck from delivering heating fuel to the Clare Mont Farm residence, causing pipes to freeze and burst. In June 1979, Castles blocked the path of a tenant's moving truck with an automobile. One potential buyer testified he withdrew his offer to purchase Clare Mont Farm because of the sign. A real estate agent testified that the sign frightened potential buyers, and as a result, Wright had reduced the price of the property from $379,500 to $325,000.

At the conclusion of Wright's case, Castles made a motion to strike evidence relating to financial loss, which the court sustained after the following colloquy:

> [Counsel for Wright]: Of course, we pray that the temporary injunction be made a permanent injunction to the complainant on the Santee Park Road for all purposes, including heavy hauling, and that is all.
>
> The Court: All right, sir, you are not requesting any financial loss in this?
>
> [Counsel for Wright]: Not in this case, Your Honor.
>
> The Court: I will sustain the motion.

Subsequently, the parties compromised the chancery suit, and the court entered a final consent decree on August 26, 1981, permanently enjoining Castles from interfering with Wright's residen-

tial, agricultural, and equestrian use of the Santee Park Road right of way.

At the outset, we reject Castles' contention that the prayer for general relief in Wright's bill of complaint was sufficient to include the allegations and claims set forth in Wright's motion for judgment. Under a prayer for general relief, a court may grant only relief that is germane to the subject matter of the specific relief sought and when the plaintiff asserts some right arising from the specific allegation made. *See Layton* v. *Seawall Enterprises, Inc.*, 231 Va. 402, 406, 344 S.E.2d 896, 899 (1986).

Castles also contends that when a plaintiff initiates an equity suit, he must seek in that proceeding all monetary damages to which he may be entitled. If the plaintiff fails to do so, Castles argues, he is precluded by *res judicata* from maintaining an action at law to recover such damages. Citing foreign authority, Castles appears to invite us to abrogate the long-standing distinction between law and chancery and adopt a "unified system."

We decline the invitation. The marked distinction between law and chancery, a product of the English legal system, continues to exist in the Commonwealth.

When a party seeks monetary damages caused by another's tortious conduct, he must bring his action on the law side of the court, and either party has a right to a jury trial. *See Stanardsville Vol. Fire Co.* v. *Berry*, 229 Va. 578, 583, 331 S.E.2d 466, 469-70 (1985); *O'Brien* v. *Snow*, 215 Va. 403, 405, 210 S.E.2d 165, 167 (1974). On the other hand, when a party seeks injunctive relief, he must sue in equity. In equity, a litigant has no constitutional right to trial by jury, *Forbes & Co.* v. *So. Cotton Oil Co.*, 130 Va. 245, 263-64, 108 S.E. 15, 21 (1921), and, absent a plea in equity, *see* Code § 8.01-336(D), no statutory right.

Moreover, a chancery suit is not *res judicata* to a subsequent law action unless the very matter in controversy in the pending action was decided in the prior suit. *Pleasants* v. *Clements*, 29 Va. (2 Leigh) 474 (1831) (a chancery proceeding to rescind a contract does not bar a subsequent law action to recover damages for breach of warranty on the same contract). For *res judicata* purposes, four elements must concur: (1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made. *Mowry* v. *City of Virginia Beach*, 198 Va. 205, 211, 93 S.E.2d 323, 327 (1956).

Castles, however, contends that in *Patterson* v. *Saunders*, 194 Va. 607, 74 S.E.2d 204 (1953), we "held that a decree refusing an injunction against cutting timber was res judicata of a subsequent damage action for cutting the same timber." Castles suggests that *Patterson* supports his contention that Wright was required to prosecute his injunction suit and his damage claim in the same proceeding. We view *Patterson* differently.

The plaintiff in *Patterson* brought a law action to recover monetary damages for timber the defendant had cut from land allegedly owned by the plaintiff. The defendant filed a plea of *res judicata* based on a prior equity proceeding in which the plaintiff had sought to enjoin the defendant from cutting the same timber from the same land. The chancellor had denied the injunction because the plaintiff failed to prove his title to the land.

In the *Patterson* law action, whether the plaintiff owned the land was essential to determining whether he was entitled to damages. Because the issue of the plaintiff's title had been fully litigated and resolved against him in the equity proceeding, we held that the plaintiff was precluded from maintaining an action at law for damages for the cut timber. *Id.* at 612, 74 S.E.2d at 208. Thus, *Patterson* actually rests upon the doctrine of collateral estoppel,\* not *res judicata* (*res judicata* was a misnomer). Neither *Patterson* nor the doctrine of collateral estoppel has any bearing on the present appeal.

Castles finally contends that "[t]o allow Wright to seek damages in a law action would be contrary to the well established doctrine of res judicata which prevents splitting of a cause of action." In support of this contention, Castles relies upon *Jones* v. *Morris Plan Bank*, 168 Va. 284, 191 S.E. 608 (1937).

*Jones* involved two *law* actions based on one installment contract containing an acceleration clause making all monies immediately due upon default. In the first action, the creditor sued the debtor for a judgment on two delinquent installments. In the sec-

---

\* In the case of *Bates* v. *Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921, (1974), we said:

> *Collateral estoppel* is the preclusive effect impacting in a subsequent action based upon a collateral and *different cause of action.* In the subsequent action, the parties to the first action and their privies are precluded from litigating any *issue* of fact actually litigated and essential to a valid and final personal judgment in the first action.

(Emphasis in original; citation and footnotes omitted.)

ond action, the creditor sought judgment on the remaining installments. We held that *res judicata* barred the second action because all installments were due and owing under the acceleration clause when the creditor instituted the first action. *Accord Snyder v. Exum*, 227 Va. 373, 315 S.E.2d 216 (1984). We reasoned that the contract was indivisible and, therefore, the creditor could maintain only one action to recover the balance owing. We said when "the same evidence will support both actions there is but one cause of action." *Jones*, 168 Va. at 291, 191 S.E. at 610.

The present case, unlike *Jones*, involves a prior equity suit followed by a tort action at law for monetary damages. Clearly, evidence necessary to obtain an injunction enjoining Castles from unlawfully interfering with Wright's use of the right of way differs from evidence necessary to prove that Castles slandered Wright's title and interfered with Wright's contractual relations.

In the chancery suit, Wright relied on the equitable doctrines of estoppel, waiver, and laches to support his contention that the restrictive covenant prohibiting heavy hauling over the right of way was unenforceable. Injunction is an extraordinary remedy, available only in equity. To obtain the injunction, Wright had to prove that he would suffer irreparable harm if the injunction were not granted and that he did not have an adequate remedy at law. *See, e.g., Carbaugh* v. *Solem*, 225 Va. 310, 314, 302 S.E.2d 33, 35 (1983).

Wright bases his present law action upon alleged torts. To prove slander of title, Wright must show that the defendants acted with malice or in reckless disregard of the truth or falsity of the statement placed on the sign. *See generally*, Annot. 4 A.L.R. 4th 532 (1981 & Supp. 1986). To prove tortious interference with a contract, Wright must show that the defendants intentionally and improperly interfered with his contractual relations by causing a third party not to enter into a prospective contract with him. *See Chaves* v. *Johnson*, 230 Va. 112, 120-21, 335 S.E.2d 97, 102-03 (1985); *Allen Realty Corp.* v. *Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 597 (1984). Wright also must prove compensatory damages; and to recover punitive damages, he must show that the defendants acted with "ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of [his] rights." *Lee* v. *Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978).

We conclude that the present case is controlled by *Worrie* v. *Boze*, 198 Va. 533, 95 S.E.2d 192 (1956). In *Worrie*, the plain-

tiffs brought a law action claiming compensatory and punitive damages for the fraudulent, willful, and malicious acts of the defendants, alleging that the defendants had conspired to breach an employment contract between the parties. The defendants pleaded *res judicata*, claiming that a prior equity suit brought by the plaintiffs barred the law action.

The previous equity suit involved the same employment contract between the plaintiffs and defendants. The contract contained a covenant prohibiting the defendants from competing with the plaintiffs within a certain area for a stated period of time. The employment contract was terminated, and shortly thereafter the defendants opened a competing business in the restricted area.

In the chancery suit, the plaintiffs asked for an injunction restraining the defendants from operating the competing business in violation of the covenant not to compete. Plaintiffs' bill contained "prayers for injunctive and general relief, but no prayer for an assessment of damages." *Id.* at 535, 95 S.E.2d at 194-95. Following the trial, the chancellor enjoined the defendants from violating the terms of the contract. *Id.*

In support of their plea of *res judicata* in the subsequent law action, the defendants argued that the plaintiffs "based [their case] on the identical cause of action which was litigated in the former equity suit." *Id.* at 537, 95 S.E.2d at 196. We rejected this argument, stating that "while the causes of action in the two suits [were] closely related, they [were] not identical." *Id.* at 538, 95 S.E.2d at 197.

In *Worrie*, we said that the purpose of the chancery suit was to enjoin the defendants from violating the restrictive provisions of the contract. *Id.* We noted that the issues in the equity suit were whether the contract was valid and enforceable and if so, whether it should be enforced. We observed, on the other hand, that the law action was based upon an alleged tort, *i.e.*, conspiracy to induce breach of contract. We stated that the issues in the law case were (1) whether the defendants conspired to breach the contract, and (2) if so, whether the plaintiffs were entitled to recover damages for the defendants' tortious conduct. *Id.*

*Worrie* and the present case are strikingly similar. The purpose of Wright's chancery suit was to determine the enforceability of the restrictive covenant. The issue was whether Castles, by his conduct, had rendered the covenant unenforceable. On the other hand, the issues in the present law action are whether (1) Castles

maliciously and falsely slandered Wright's title, (2) Castles intentionally and improperly interfered with Wright's contractual relations, and (3) Wright is entitled to recover compensatory and punitive damages. In the present law action, as in *Worrie*, neither the causes of action nor the remedies sought are identical to those in the prior chancery suit.

Thus, we hold that the trial court erred in sustaining Castles' plea of *res judicata*. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings.

*Reversed and remanded.*