966 F.2d 1443
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gloria PFOLTZER; Theresa Morris, an Infant, by Mother and
Next Friend; Christopher Morris, an Infant, by Mother and
Next Friend; Randy Morris, an Infant, by Mother and Next
Friend, Plaintiffs-Appellants,
v.
FAIRFAX COUNTY DEPARTMENT OF HUMAN DEVELOPMENT; Susan
Manzo; Paulette Byrd; Florence Hannigan,
Defendants-Appellees,
and
Louis VILLAFANE, Defendant.
 No. 91-1844.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 7, 1992
Decided: June 19, 1992
 
 Argued: John M. DiJoseph, Sattler & Dijoseph, Arlington, Virginia, for Appellants.
 Edward E. Rose, III, Assistant County Attorney, Fairfax, Virginia, for Appellees.
 On Brief: Robert Lyndon Howell, Acting County Attorney, Fairfax, Virginia, for Appellees.
 Before MURNAGHAN, SPROUSE, and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 The appellants, Gloria Pfoltzer ("Pfoltzer") and her three minor children, Randy Morris, Christopher Morris, and Theresa Morris (the "children"), here appeal two orders, entered by the district court for the Eastern District of Virginia, one of which denied appellants' motion for preclusive effect of a prior order of the Fairfax County Circuit Court ("Fairfax Circuit Court"), and the other which granted the appellees' motion for summary judgment. The appellants brought suit under 42 U.S.C. § 1983, challenging, inter alia, the removal of the children from Pfoltzer's home and the placement of them in foster homes. In addition, Pfoltzer asserted that the children, while in foster homes, were abused, were allowed only supervised visitation rights and were denied access to their Roman Catholic faith. The defendants/appellees are the County of Fairfax, Virginia (the "County"); Suzanne Manzo ("Manzo"), the Director of the County Department of Human Development ("CDHD"); Paulette Bird ("Bird"), social worker with CDHD; Florence Hannigan ("Hannigan"), social worker with CDHD and supervisor of Bird; and Louis Villafane ("Villafane").[1] The individual named defendants were sued only in their individual capacity.
 
 
 2
 Subsequent to filing suit, Pfoltzer moved the district court to enter an order granting preclusive effect to a prior order of the Fairfax Circuit Court in which the court stated, inter alia, that the removal of the children from Pfoltzer's home on January 13, 1989 was unconstitutional. The district court refused to hold that the Fairfax Circuit Court's order was preclusive in the instant suit. Thereupon, the defendants filed a motion for summary judgment, which the district court granted on October 15, 1991, holding that Pfoltzer and her children failed to establish any violation of federally-protected rights. The instant appeal followed. Because we agree with the district court's decision that the County and the individual defendants are entitled to judgment as a matter of law, we affirm.
 
 I.
 
 3
 The current conflict between the parties formally began on May 27, 1988, when the Fairfax County Juvenile and Domestic Relations Court ("J & D court") issued an emergency removal order directing that the children be placed in the legal custody of the Fairfax County Department of Social Services (the "Department"). The action was prompted by sworn allegations that Pfoltzer's second husband, Daniel Pfoltzer, employed abusive disciplinary methods upon the children and that Pfoltzer acquiesced in, or contributed to, the use of those disciplinary methods. The J & D court held a preliminary removal hearing on June 3, 1988 and ordered that the Department continue with custody of the children. Trial was set for August 5, 1988.
 
 
 4
 Prior to trial, Pfoltzer, with her second husband, negotiated and agreed to a consent order with the defendants, which the J & D court subsequently entered. The consent order provided, inter alia: (1) that the parties agreed that Daniel Pfoltzer's disciplinary methods were "inappropriate" and that Pfoltzer had been aware of them but did not intervene; (2) that the parties intended to return the children to their home contingent on certain factors; (3) that "temporary legal custody of [the children] shall continue in the Department until further order of the court;" and (4) that the Pfoltzers agree to cooperate with Home Based Services,[2] to participate actively in therapy with a Dr. Broars, and to have the children participate in therapy with a Dr. Federici. Approximately two weeks subsequent to the entry of the consent order, the Department returned the children to the Pfoltzer home.
 
 
 5
 Sometime thereafter, the defendants obtained information which led them to believe that the Pfoltzers were not complying with the consent order. On January 12, 1989, the individual defendants (except Manzo), in conjunction with an Assistant Fairfax County Attorney and the children's guardian ad litem, held a meeting to discuss the situation. Following the meeting, the defendants decided to remove the children from the Pfoltzers' physical custody. The defendants did not petition the J & D court for an order to show cause why the Pfoltzers should not be found in contempt for violations of the consent order because the defendants determined such action to be unnecessary since the terms of the consent order granted legal custody to the Department.[3] Thus, defendants Bird and Manzo sent the Pfoltzers a letter of removal dated January 13, 1989, in which the defendants stated that removal of the children from the home was necessary in the Department's view because the Pfoltzers had not fulfilled their responsibilities under the consent order. Thereupon the children were removed to foster care.
 
 
 6
 A hearing before the J & D court was set for January 30, 1989, but was postponed until March 16, approximately two months following the children's removal from the home, at which time a three-day hearing was held on the petitions to have the children declared abused and/or neglected. Following testimony, the J & D court held, inter alia, that the Department had established by clear and convincing evidence that the children were "in need of services" within the meaning of Virginia Code Annotated § 16.1-279(c); that the parents had declined services; that reasonable efforts had been made to prevent removal; that continued placement in the Pfoltzer home would be contrary to the children's welfare; and that "legal custody of [the children] shall continue with the Department." No appeal was taken from the order embodying that holding.
 
 
 7
 Over the next year and a half, the Pfoltzers filed various motions for return of custody and modification of visitation conditions, all of which apparently were denied. The denial of one such motion resulted in an appeal to Judge Fortkort of the Fairfax County Circuit Court, who issued an order stating, without explanation or effect, that the January 13, 1989 removal of the children was unconstitutional. Nonetheless, Judge Fortkort actually ruled that the children should not be returned to the custody of Pfoltzer in light of the J & D court's determination that the children were in need of services and Pfoltzer's failure to appeal that decision.
 
 
 8
 In May of 1990, the Department consented to the children's return to the Pfoltzer home. Thereafter, legal custody was restored to Gloria Pfoltzer by consent order in December of 1990.
 
 
 9
 Subsequently, Pfoltzer and her children instituted a 42 U.S.C. § 1983 action, challenging the state's actions in removing the children from the Pfoltzer home on January 13, 1989. In particular, they claimed that the defendants' actions were unconstitutional, and that while in foster care, the children were abused and denied access to their Roman Catholic faith. The Amended Complaint alleged (1) a Fourteenth Amendment due process claim; (2) a First Amendment free exercise claim; (3) a claim based upon a violation of the Adoption Assistance and Child Welfare Act of 1980;[4] and (4) a civil conspiracy to violate the rights protected by those laws.
 
 
 10
 After the district court refused to accord preclusive effect to the prior order of the Fairfax Circuit Court, and following the defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment with respect to the allegedly unlawful removal of the children from the Pfoltzer home on January 13, 1989, the district court held that the plaintiffs "failed to establish any violation of federally-protected rights." Accordingly, the district court granted the defendants' motion for summary judgment, dismissing the plaintiffs' suit.
 
 
 11
 Pfoltzer has appealed, arguing first that the district court erred in declining to afford preclusive effect to the prior order of the Fairfax Circuit Court. Pfoltzer also has argued that the district court erred in granting summary judgment in favor of the County and the individual defendants.
 
 II.
 Preclusive Effect of State Court Order[5]
 
 12
 The appellants first have argued that the district court erred in refusing to accord preclusive effect to the October 12, 1989 order of the Fairfax Circuit Court. The appellees, in contravention, have responded that the district court properly refused to give the prior order res judicata effect as to the issue of whether the change of placement of the children, removing them from the Pfoltzer home, violated their constitutional rights.
 
 
 13
 Federal courts are required to give preclusive effect to state court judgments only when the courts of the state in which the judgment was entered would accord such a preclusive effect. 28 U.S.C. § 1738. See also Haring v. Prosise, 462 U.S. 306, 313 (1983); Allen v. McCurry, 449 U.S. 90, 96 (1980). In Virginia, the state in which the judgment was entered, four elements are necessary in order for a judgment to be considered res judicata: "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of persons for or against whom the claim is made." Commonwealth of Virginia, Dep't of Social Serv. v. Johnson, 7 Va. App. 614, 376 S.E.2d 787, 789 (1989) (citing Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986)). Furthermore, the party "must also establish that a final judgment on the merits has been reached by a court of competent jurisdiction." Id. (citations omitted). Applying those principles to the judgment at hand indicates that the district court correctly determined that the order of the Fairfax Circuit Court was not entitled to preclusive effect in the instant suit.
 
 
 14
 We find that the order does not amount to a final decision on the merits of the constitutionality of the removal of the children from the Pfoltzer home. The lone and unclarified judicial statement relied upon by the appellants, which indicated the court's opinion that the taking was unconstitutional, was not essential to the court's conclusion that custody should remain with the Department rather than the Pfoltzers. Under Virginia law, courts will not afford preclusive effect to findings that are neither material nor necessary. See, e.g., Talbot v. Virginia Elec. & Power Co., 152 Va. 864, 148 S.E. 869, 869-70 (1929). Because the Fairfax Circuit Court's statement regarding the unconstitutionality of the removal of the children from the Pfoltzer home was essentially dictum, neither material nor necessary to its decision to continue custody in the Department, we find that the district court properly determined that the order was not entitled to preclusive effect in the instant case.[6]
 
 III.
 
 15
 Propriety of Summary Judgment Against Appellants
 
 
 16
 We review the district court's order granting summary judgment de novo, utilizing the same standard applied by the district court in deciding the motion in the first instance. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127-28 (4th Cir. 1987). We view all of the evidence in the light most favorable to the non-movant. Id. However, to withstand summary judgment, a plaintiff must do more than offer conclusory allegations; a plaintiff must introduce sufficient evidence to allow a rational jury to return a verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). With that standard in mind, we turn to the merits of the instant appeal.
 
 
 17
 A.Procedural Due Process: Removal of Children
 
 
 18
 First, the appellants have argued that the removal of the children from the Pfoltzer home on January 13, 1989 violated the appellants' procedural due process rights in that there was no prior notice and hearing. The County has replied in the alternative: (1) that the appellants were provided sufficient due process or (2) that they waived any due process objection.
 
 
 19
 It is undisputed that parents possess a constitutionally protected liberty interest in the care and custody of their children, and that the children possess a similar liberty interest in family integrity. See Santosky v. Kramer, 455 U.S. 745, 753 (1982); Stanley v. Illinois, 405 U.S. 645, 651-52 (1972). The liberty interest that parents possess with regard to their children is grounded in the Fourteenth Amendment, which protects parents from governmental deprivation of such liberty interests without an opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976). In order to demonstrate a due process violation in the instant case, the appellants must (1) identify a protected liberty interest; (2) show a deprivation of that interest by the state; and (3) identify a deficiency in the process afforded them. Id. at 333-34.
 
 
 20
 As we have noted, Pfoltzer possesses a constitutionally protected liberty interest in the care and custody of her children, and the children possess a similar interest in the family unit. Kramer, 455 U.S. at 753; Stanley, 405 U.S. at 651-52. Therefore, the appellants satisfy the first element necessary to state a due process violation.
 
 
 21
 It is the second element, the deprivation of the liberty interest by the state, that is most problematic for the appellants. The appellees have argued that no hearing was required prior to the January 13, 1989 removal of the children from the Pfoltzer home. The appellees point to the fact that full legal custody remained with the Department under the terms of the consent order, and that Pfoltzer was awarded only temporary custody subject to certain enumerated conditions. Because legal custody in Virginia amounts to "a legal status created by court order which vests in a custodian the right ... to determine where and with whom [the child] shall live," Virginia Code Annotated § 16.1-228 (emphasis added), the appellees have maintained that the removal of the children from the Pfoltzer home on January 13, 1989 was not a deprivation by the Commonwealth of a protected liberty interest because Pfoltzer already had voluntarily relinquished legal custody of the children to the Commonwealth pursuant to the express terms of the consent order. The appellees have directed our attention to the opinion in Weller v. Department of Social Services for Baltimore, 901 F.2d 387, 393 (4th Cir. 1990), as support for their position.
 
 
 22
 In Weller, we held that a father had failed to demonstrate a due process violation when he had voluntarily relinquished custody and management of his son to the State, holding that "[i]f one voluntarily surrenders a liberty interest to the State, there has been no 'deprivation' of that interest by the State, and no due process violation." Id. at 393 (citing Stone v. University of Maryland Medical Sys. Corp., 855 F.2d 167, 172-73 (4th Cir. 1988)). In the present case, as in Weller, Pfoltzer voluntarily relinquished legal custody of the children to the Department, an arm of the Commonwealth, pursuant to the consent order. By the terms of the consent order, Pfoltzer vested the Department with the authority to determine "where and with whom [the children] shall live." See Va. Code Ann. § 16.1-228 (defining legal custody).
 
 
 23
 We find that, because Pfoltzer voluntarily relinquished her liberty interest in the custody of the children pursuant to the terms of the consent order, she has failed to show a deprivation of a protected liberty interest, and, therefore, has failed to create a genuine issue for the jury. See Weller, 901 F.2d at 393. Accordingly, the district court correctly granted summary judgment as to the appellants' claim of a due process violation stemming from the January 13, 1989 removal of the children from the Pfoltzer home.
 
 
 24
 B.Procedural Due Process: Supervised Visitation
 
 
 25
 Next, the appellants have contended that the appellees violated their procedural due process rights by restricting the Pfoltzers to supervised visitation with the children following the January 13, 1989 removal from the home. The visitation procedures outlined in the January 13, 1989 removal letter were reviewed by the J & D court on February 16, 1989. In that hearing the court held that "supervised visitation of all children by DSS may take place anywhere the Dept. deems appropriate and under such conditions as the Dept. deems appropriate." The hearing by the J & D court, and the ability to appeal therefrom, afforded the appellants sufficient post-deprivation process to satisfy due process in the visitation context. See Weller, 901 F.2d at 394. Therefore, summary judgment against the appellants was appropriate.[7] C.First Amendment Free Exercise of Religion
 
 
 26
 Finally, the appellants have argued that their First Amendment rights were violated because the children were not permitted to practice or to receive instruction in Roman Catholicism while in foster care. The appellees, in contradiction, have pointed to the affidavits of the children, and Pfoltzer, herself, indicating that the children were afforded opportunities to practice their religion (and actually did practice such religion).
 
 
 27
 With respect to children in foster care, a state is required to make reasonable efforts to accommodate the parent's religious preferences. Wilder v. Bernstein, 848 F.2d 1338, 1346-47 (2nd Cir. 1988). In the instant case, the appellants have introduced no evidence, other than conclusory statements, that the children were unreasonably restricted in the free exercise of their religion.[8] On the other hand, depositions of the children indicated that they did exercise their Roman Catholic faith. Christopher attended church nearly every Sunday with his foster parents, took Catholic instruction classes, and made his First Communion while living with the foster parents. Pfoltzer's own deposition confirms the fact. Randy's deposition indicates that he attended church regularly while living with the Ryans and somewhat less regularly while living at the Commonwealth group home. Pfoltzer confirmed in her deposition that Randy attended church"three fourths of the time." Finally, uncontradicted deposition testimony indicates that Theresa was taken to church but the foster family was forced to stop the practice because Theresa's temper tantrums rendered it impossible.
 
 
 28
 Even construing the record in a light most favorable to the appellants, there is simply no evidence from which a reasonable jury could return a verdict in the appellants' favor on the First Amendment claim. Therefore, we agree with the district court that the uncontroverted testimony satisfies the County's burden of making reasonable efforts to accommodate religious practices in foster care placement. See Wilder v. Bernstein, 848 F.2d 1338, 1346-47 (2nd Cir. 1988). Consequently, summary judgment was properly granted.[9]
 
 
 29
 The district court's orders denying preclusive effect and granting the Department's motion for summary judgment are, accordingly,
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The claim against Villafane has been dismissed with prejudice and is not before us on appeal
 
 
 [2]
 Home Based Services is a private, for-profit organization which has contracted with Fairfax County to provide home-based family services for the Department
 
 
 [3]
 Under Virginia law, legal custody "vests in a custodian the right to have physical custody of the child, to determine where and with whom he shall live...." Va. Code Ann. § 16.1-228 (Michie Supp. 1991)
 
 
 [4]
 Subsequent to the district court decision and prior to oral argument, the Supreme Court held that section 671(a)(15) of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628, 670-679a, does not create rights enforceable under 42 U.S.C. § 1983. Suter v. Artist M., 112 S. Ct. 1360, 1367 (1992). Accordingly, summary judgment with respect to that issue is affirmed
 
 
 [5]
 The review of the propriety of the order denying preclusive effect is complicated by the fact that the parties did not include it in the joint appendix. We, consequently, obtained the complete record from the district court. The order, however, simply recites that the motion for preclusive effect is denied for the reasons stated from the bench at the hearing. Unfortunately, a transcript of that hearing is not included in the district court's record, and apparently one was not made
 
 
 [6]
 Moreover, because the individual defendants were not involved in the first suit and because they are not sued in their governmental capacities in the instant case, no privity exists between the County and the defendants. See generally Race Fork Coal Co. v. Turner, 5 Va. App. 350, 363 S.E.2d 423, 426-27 (1987). No identity of parties, as a consequence, exists and accordingly Virginia would not afford the order res judicata effect. See, e.g., Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986)
 Likewise, we decline to afford the order res judicata effect in the instant case. See Haring v. Prosise, 462 U.S. 306, 313 (1983). Not only do we decline to hold the order res judicata on the issue of the constitutionality of the January 13, 1989 removal of the children from the Pfoltzer home, but we also conclude that the Commonwealth did not unconstitutionally deprive Pfoltzer of the children because Pfoltzer voluntarily relinquished legal custody of the children pursuant to the terms of the consent order. See infra section A, slip op. at 9-10.
 
 
 [7]
 Because we have found that the appellants have failed, as a matter of law, to demonstrate a viable due process claim, we do not address the district court's alternative holdings vis a vis the issue of the existence vel non of qualified immunity for the County or the individual defendants
 The district court also determined that there was no constitutional deprivation as a result of alleged abuse of the children while in foster care. Pfoltzer's complaint alleged that Randy was abused by being thrown against a car and that Theresa was abused by her foster father requiring her to give him a nude backrub. The County, in support of summary judgment, points to the uncontroverted affidavits of Manzo, Hannigan, and Bird, all of which state that the allegations of child abuse were carefully investigated and determined to be de minimis, but nonetheless the children were removed from the foster homes in question. Pfoltzer failed to introduce any evidence contradicting the appellees' affidavits. Therefore, Pfoltzer has not demonstrated a genuine issue on the alleged abuse and summary disposition is appropriate. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).
 
 
 [8]
 The main support in the record for the appellants' argument is the following, made by Pfoltzer: "We repeatedly told [the appellees] and others about the harm occurring to the children and that we wanted the children to exercise their Catholic faith. Our appeals were ignored." However, as set forth, Pfoltzer and the children made numerous contrary statements in their depositions
 
 
 [9]
 Because we have found that the appellants have failed to create a genuine issue as to any of their substantive claims, we need not address the appellants' claim of civil conspiracy to violate such rights