## CIRCUIT COURT OF FAIRFAX COUNTY

Bank of America, N.A.,
Personal Representative
of the Estate of
Andrew Freier

    v.

Jonathan M. Freier et al.

January 16, 2001

Case No. (Chancery) 168056

BY JUDGE LESLIE M. ALDEN

This case is before the Court on two motions by Respondent Amy Freier (Mrs. Freier). The first is Mrs. Freier's Demurrer and Plea in Bar to Complainant, Bank of America's ("the Personal Representative") Bill of Complaint for Aid and Direction. The second is Mrs. Freier's Demurrer and Plea in Bar to Respondent Susan Freier Caine and Jonathan Freier's ("the Children") Cross-Bill of Complaint. Both the Personal Representative and the Children have filed opposition briefs to Mrs. Freier's motions.

The issues under advisement relate to the timeliness with which this issue has been brought before the court, the enforceability of a partially executed Marital Agreement and the existence of a binding oral agreement. The Court must determine:

(1) Whether the Bank and Children are barred by the doctrine of *res judicata* from litigating the enforceability of the Marital Agreement signed by Mrs. Freier; and

(2) Whether the Marital Agreement signed by Mrs. Freier is enforceable as a matter of law or whether the oral communications between Dr. and Mrs. Freier as to Dr. Freier's general estate plan are enforceable against Mrs. Freier as a matter of law.

For the reasons set forth herein, the Court finds that the enforceability of the Marital Agreement was an issue belonging before the court in the prior litigation between the Respondents in this suit. To allow the parties to that prior litigation, or the Personal Representative, a privy to the parties, to litigate the Agreement's enforceability would amount to claim-splitting; thus, *res judicata* acts as a bar to raising this issue within the Personal Representative's Bill for Aid and Direction and the Children's Cross-Bill. If the Court, however, were to determine that *res judicata* does not apply, the Court finds the Marital Agreement to be unenforceable both under Section 20-149 of the Code of Virginia and under familiar principles of contract law. Additionally, the Court finds the facts show that the parties contemplated a written agreement and that no oral contract was entered into governing the distribution of Dr. Freier's estate.

## I. *Factual Background*

In this case, the Complainant, Bank of America, in its role as Personal Representative, seeks the Court's aid and direction in distributing the estate of Dr. Andrew Freier who died testate on January 27, 1998. At the center of this controversy is the question of whether a Marital Agreement executed only by Amy Freier, Dr. Freier's wife at the time of his death, should be given any effect in the distribution of the estate. A summary of the Marital Agreement's preparation, execution, and the litigation regarding the estate of Dr. Andrew Freier follows.

In November and December of 1997, Dr. Freier was hospitalized due to medical problems associated with congestive heart disease. Upon his release from the hospital, discussions ensued between Dr. Freier, Mrs. Freier, and their separate attorneys. These discussions were designed to effectuate a change to Dr. Freier's then current estate plan. Under the provisions of his previous will, drafted prior to his marriage to Amy Freier, Dr. Freier's entire estate was left to the Children.

Part of Dr. Freier's estate consisted of three IRAs, two of which named the Children as beneficiaries, the third naming Dr. Freier's estate as beneficiary. The first change to his estate plan was executed on January 21, 1998, when Dr. Freier signed the proper documentation to make Mrs. Freier the sole beneficiary of his three IRAs. On January 22, 1998, a draft Marital

Agreement was prepared by Dr. Freier's attorney to implement additional changes to Dr. Freier's estate plan. Mrs. Freier's attorney added an additional provision to the Agreement and a final copy of the Agreement was prepared by Dr. Freier's attorney for signature on January 24, 1998. The Agreement was brought to the Freier home on January 24, 1998, and Mrs. Freier executed it. That same day, Dr. Freier's attorney was prepared to present Dr. Freier with the Agreement and a newly prepared Will; however, Dr. Freier was unable to communicate with his attorney due to his deteriorating health. Dr. Freier died on January 27, 1998, without ever signing the Marital Agreement or his new Will.

On September 11, 1998, the Children filed an action in Fairfax Circuit Court against Mrs. Freier, *Caine v. Freier*, Chancery No. 156967, to void the designation of Mrs. Freier as beneficiary on two of the IRAs. The Bill of Complaint in that case alleged forgery of the signatures on the IRA beneficiary forms, lack of capacity by Dr. Freier to execute the change of beneficiary forms, and fraud and undue influence by Mrs. Freier. It also sought to impose a constructive trust on the IRA assets. The Personal Representative of Dr. Freier's estate was not a named party in that litigation.

Prior to trial in June 1999, the Children learned that Mrs. Freier had executed the Marital Agreement that was discussed as part of Dr. Freier's estate plan prior to his death. The Personal Representative of Dr. Freier's estate also became aware prior to trial that the Marital Agreement was executed by Mrs. Freier but not signed by Dr. Freier. During the trial of the case, the Children did not pursue the issue of the Marital Agreement's enforceability, though the Court *sua sponte* raised this issue with the parties during trial.

At the close of the Children's case, the Court granted Mrs. Freier's motion to strike the counts regarding lack of capacity and undue influence. Later, at the close of Mrs. Freier's evidence, the court granted the motion to strike as to the remaining counts. The Children then moved, post-trial, for leave to amend their Bill of Complaint so as to argue that the Marital Agreement signed by Mrs. Freier was enforceable. The Court accepted briefs and oral argument on the motion, but denied the motion as injecting a new theory of the case that was offered "simply too late." The Children appealed the Court's decision to the Virginia Supreme Court. The petition for appeal was denied on April 25, 2000.

On August 8, 2000, the Personal Representative filed this Bill for Aid and Direction to assist in its distribution of the assets remaining in Dr. Freier's estate. The Personal Representative identified seven different issues for the Court to address. Issue one in that Bill, whether the Marital Agreement

executed by Mrs. Freier is fully or partially enforceable by Dr. Freier's estate, is the subject of the Demurrer and Plea in Bar filed by Mrs. Freier on October 10, 2000.

Additionally, on September 19, 2000, the Children filed a Cross-Bill of Complaint against the Personal Representative. This Bill seeks additional aid and direction by the Court on issues the Children deem necessary to the appropriate administration of the Estate's proceeds. The Court shall assume without deciding, for the purpose of this opinion, that the Children indeed have standing to bring a Cross-Bill in this action. Mrs. Freier filed a Demurrer and Plea in Bar to this Cross-Bill on October 16, 2000.

The Court heard oral argument on Mrs. Freier's Demurrer and Plea in Bar to both the Bill for Aid and Direction and the Cross-Bill filed by the Children on November 3, 2000.

## II. *Plea in Bar*

Within her Plea in Bar, Mrs. Freier argues that the Personal Representative and Children are barred by the doctrine of *res judicata* from presenting here the issue of the Marital Agreement's enforceability. This doctrine dictates that the adjudication of a prior lawsuit between the same parties or their privies constitutes a bar to the issues actually decided in the first suit and all issues that belonged to the prior litigation and may have properly been brought forward at that time. *City of Virginia Beach v. Harris*, 259 Va. 220, 229, 523 S.E.2d 239 (2000); *Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 254, 504 S.E.2d 854 (1998) *quoting, Bates v. Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917 (1974). Because the full or partial enforceability of the Agreement relates to the testamentary intent of Dr. Freier, Mrs. Freier asserts that the issue belonged within the first litigation and cannot now be brought through the Personal Representative's Bill for Aid and Direction or argued for within the Children's Cross-Bill.

In opposition to the Plea in Bar the Personal Representative argues that Virginia law has long held that there is no privity for *res judicata* purposes between the personal representative and the heirs or devisees of an estate. Additionally, the Personal Representative and Children argue in their Cross-Bill that the Marital Agreement's enforceability was not an issue that was litigated in the prior suit and such failure to do so does not now amount to claim-splitting.

*Analysis*

*Res Judicata Bars the Litigation of the
Marital Agreement's Enforceability*

In the pursuit of judicial economy and finality of judgments, Virginia law provides that parties to litigation must bring forward their entire case in their first litigation. Parties may not test the waters and bring forth only part of their claim and then, in subsequent litigation, assert other matters rightly belonging within the first litigation. A party should not be allowed "to keep back part of his case until he ascertains what the decision of the court will be, and then come forward and obtain another hearing of matters which he might have brought forward when the case was first submitted but declined to do so." See *Jackson v. Valley Tie & Lumber Co.*, 108 Va. 714, 722, 62 S.E. 964 (1908).

The party seeking to assert *res judicata* has the burden of proving four elements: "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the person for or against whom the claim is made." See *Wright v. Castles*, 232 Va. 218, 222, 349 S.E.2d 125 (1986).

Mrs. Freier's plea of *res judicata* as to the Cross-Bill filed by the Children meets this test. The cause of action, parties, quality of person, and, in the end, the remedies in this new suit share the same identity as those in the prior litigation the Children filed against Mrs. Freier.

At the center of the prior litigation was the question of Dr. Freier's testamentary intentions and the validity of his actions at or near the time of his death. The Children sought to invalidate the IRA beneficiary designations Dr. Freier made shortly before he died on various grounds including fraud, forgery of the signatures on the IRA beneficiary forms, lack of capacity by Dr. Freier to execute the change of beneficiary forms, and undue influence by Mrs. Freier. Although evidence regarding the Marital Agreement was introduced in the prior case, the Children chose not to argue alternatively, as they do now, that the designations were valid, but were part of a larger estate plan, as evidenced by the Marital Agreement which had been prepared. Throughout the prior trial, the Children declined to argue this theory until the Court granted Mrs. Freier's Motion to Strike and no cause of action remained in the case. At that point, the Court ruled the request to amend was untimely.

The doctrine of *res judicata* applies "not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have

20

brought forward at the time." See *Roller's Adm'r v. Pittman Adm'r*, 98 Va. 613, 617, 36 S.E. 987 (1900). Indeed, *res judicata*, shall continue to apply even though matters were omitted from the first litigation as a result of negligence, inadvertence, or even accident. *Id.* The Children made a tactical decision in waiting to raise the enforceability of the Marital Agreement until the Motion to Strike had been granted. This election does not afford them now the opportunity to attempt to re-litigate the same issues surrounding their father's testamentary intent, and, thus, *res judicata* prevents the Children from raising the issue of the Agreement's enforceability within their Cross-Bill.

The question of whether *res judicata* bars the Personal Representative from raising the issue of the enforceability of the Marital Agreement is more difficult, yet yields the same result. At issue is whether the Personal Representative's Bill for Aid and Direction meets the identity of parties and remedies requirements so as to allow *res judicata* to act as a bar.

The Personal Representative is correct to point out that *Brewis v. Lawson*, 76 Va. 36 (1881), and *Mason's Devisees v. Peter's Adm'rs*, 15 Va. (1 Munf.) 437 (1810), both stand for the proposition that privity may not exist between heirs and a personal representative. In both of these cases default judgments were obtained against the administrator and subsequently sought to be imposed as a bar to litigation by the heirs and devisees of the estate in question. In holding that privity was absent, the Court concluded that the interests of the administrator, who had at best a nominal stake in the outcome, were not coextensive with those of the heirs, which had the real financial interest at stake. Moreover, the Court determined that the administrator's default proved that the interests of the heirs were never properly litigated before a court.

Applying the same rationale to these facts, this Court must identify the real parties in interest and assess whether they have had the opportunity to have their interests heard. The concern in *Brewis* and *Mason* was that the heirs and devisees did not have their interests properly presented and litigated. That is not the situation here. To the contrary; the Children and Mrs. Freier are the real parties in interest in relation to the division of the estate of Dr. Freier and had the opportunity to fully litigate precisely the same issues raised now by the nominal party. Indeed, the pleadings filed by the Personal Representative in this case demonstrate that it has no interest in the outcome the Court reaches. Therefore, under these circumstances, privity exists between the Personal Representative and the Respondents because the Children and Mrs. Freier are the real parties at interest in relation to the division of the estate of Dr. Freier.

Accordingly, to the extent the Bill for Aid and Direction asks the Court to guide the Personal Representative in the administration of the estate with

respect to Dr. Freier's intent and capacity and the effect of his actions, this lawsuit and the prior one seek the same remedies and results. Therefore, this Court finds that *res judicata* also prevents the Personal Representative from raising the issue of the Agreement's enforceability within its Bill for Aid and Direction.

### III. *Demurrer*

If *res judicata* is not a bar to the Personal Representative's Bill for Aid and Direction or the Children's Cross-Bill, Mrs. Freier argues that the Court must find the Marital Agreement she executed unenforceable as a matter of law. Mrs. Freier admits that she executed an amended Agreement prior to Dr. Freier's death; however, Dr. Freier died without reading the amended Agreement or signing it. Therefore, she argues it is unenforceable because it fails to meet required statutory formalities and fails to comply with fundamental common law contract principles of contract formation.

Mrs. Freier also contends that any oral discussions between her and Dr. Freier as to his general estate plan are unenforceable as a matter of law because both parties contemplated a final written agreement.

The Bank and the Children argue that the Agreement does not fall under the provisions of the Virginia Premarital Agreement Act, and the Children also contend that the Court may determine the Agreement's enforceability based upon the oral communications of Dr. and Mrs. Freier regarding his estate plan. In arguing these demurrers and pleas in bar the parties have relied upon the evidence adduced in the prior litigation, as it is asserted in the pleadings in this case.

### *Analysis*

#### A. *The Proposed Marital Agreement is Unenforceable as a Matter of Law*

To determine whether the Marital Agreement is enforceable, the Court first looks to Sections 20-147 through 20-155 of the Code of Virginia, which govern the content and form of pre- and post-nuptial agreements.[1] Covered by these sections are agreements between married persons that lay out "the

---

[1]  Section 20-155 of the Code provides that "Married persons may enter into agreement with each other for the purpose of settling the rights and obligations of either or both of them . . . subject to the same conditions, as provided in §§ 20-147 through 20-154 for agreements between prospective spouses." § 20-155, Code of Virginia, 1950, as amended.

disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event." § 20-150, Code of Virginia, 1950, as amended. The language of the Marital Agreement addressed the manner in which Dr. Freier's estate was to be divided upon his death. This context puts the Agreement squarely within the ambit of § 20-150.

It should be noted that the language in the Recitals portion of the Agreement indicates that the parties themselves drafted the Agreement pursuant to Virginia's Premarital Agreement Act. The Agreement states that "The parties enter into this Agreement pursuant to Section 20-155 of the Virginia Code, 1950, as amended, for the purpose of settling the rights and obligations between themselves in the event of the death of the Husband."

Section 20-149 of the Code identifies the formalities required for such agreements to be valid, and it is here that the Agreement falls short. The Code states that such an "agreement shall be in writing and signed by both parties." § 20-149, Code of Virginia, 1950, as amended. The language of § 20-149 is "clear and unequivocal" in its requirement that a marital agreement be "in writing and signed by both parties." *Deane v. Morris*, 24 Va. Cir. 234, 236 (Greene County 1991). The evidence developed in the prior litigation proved that Dr. Freier never reviewed, much less executed, the written terms of the document before his death. Therefore, as a matter of law, the Marital Agreement signed by Mrs. Freier is not enforceable.

Even if the Court were to accept the contention that the Agreement is not subject to the provisions of Sections 20-147 through 20-155, the Agreement is unenforceable under general common law contract principles. Mutual assent to the terms of a contract by the parties to that contract is a cornerstone of contract law. *Belmont v. McAllister*, 116 Va. 285, 303, 81 S.E. 81 (1914); *Allen v. Aetna Cas. & Ins. Co.*, 222 Va. 361, 364, 281 S.E.2d 818 (1981). In the light most favorable to the Complainant, the facts show that Mr. and Mrs. Freier discussed terms that were later memorialized in part in a document that Mrs. Freier changed. At best, Mrs. Freier's signature on and changes to the Agreement represented an offer by her to Dr. Freier that he was never able to accept. As such, the Marital Agreement is unenforceable as a matter of law under general contract principles.

B. *The Evidence is Insufficient to Show Any Enforceable General Agreement*

Additionally, this Court is not persuaded by the Children's contention that the January 1998 oral discussions regarding Dr. Freier's overall general estate plan constitute an agreement enforceable in regard to his estate. When parties in contract discussions do not expressly state that the validity of their

agreement is dependant upon the "preparation, approval, and signing of a formal written contract," a question of fact may exist as to whether such a written document was a requirement of the parties agreement. *Richardson v. Richardson*, 10 Va. App. 391, 396, 392 S.E.2d 688 (1990). However, a review of the facts here shows that Dr. and Mrs. Freier intended to take all the steps necessary to formalize their discussions in writing. Both obtained counsel to represent their interests and to draw up a formal Marital Agreement pursuant to the formalities required by § 20-149 and to revise a Will. Such written formalities continue to be a cornerstone of the law regarding both the drafting of wills and execution of marital agreements, as evidenced by the Code and common law. As to the writing formality required with the drafting of wills, Section 64.1-49 of the Code of Virginia, makes clear that a will is not valid "unless it be in writing and signed by the testator." See also, *Rinker v. Simpson*, 159 Va. 612, 166 S.E. 546 (1932). As noted earlier in this letter opinion, the writing formality for pre- and post-marital agreements is covered by Section 20-149 of the Code of Virginia, 1950, as amended. The activities of Dr. and Mrs. Freier indicate unequivocally to the Court that the parties expected to execute formal documents to encapsulate all of the provisions that Dr. Freier intended to include in the distribution of his estate. Thus, any oral discussions which Dr. and Mrs. Freier had as to the general plan of distribution for Dr. Freier's estate are not binding because the parties contemplated a writing and that writing was never executed fully.

Therefore, the court concludes that Mrs. Freier's demurrer as to the issue of the Marital Agreement's enforceability within the Children's Cross-Bill and the Personal Representative's Bill for Aid and Direction is properly sustained.

## Conclusion

For the reasons stated herein, the Court sustains Respondent Amy Freier's Plea in Bar and Demurrer as to the issues relating to the enforceability of the Marital Agreement within the Complainant Personal Representative's Bill for Aid and Direction and the Children's Cross-Bill. An Order so providing shall be entered on this date.

Counsel are requested to file with the Court, on or before January 30, 2001, an itemization of all issues remaining to be addressed by a further ruling of the Court.

*Order*

This matter is before the court upon the Plea in Bar and Demurrer filed by Respondent Amy Freier as to Count I of the Personal Representative's Bill for Aid and Direction and as to the Cross-Bill filed by Respondents Jonathan Freier and Susan Freier Caine. It appearing to the Court for the reasons set forth in the opinion dated January 16, 2001, and incorporated herein, that the Respondent's Plea in Bar and Demurrer should be sustained, it is therefore ordered that the issues relating to the enforceability of the Marital Agreement within the Complainant Personal Representative's Bill for Aid and Direction and the Children's Cross-Bill are dismissed with prejudice, ordered that the issue relating to the enforceability of a general oral estate plan agreement within the Children's Cross-Bill is dismissed with prejudice, and ordered that counsel file with the Court, on or before January 30, 2001, an itemization of all issues remaining to be addressed by a further ruling of the Court.