COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Chaney, White and Senior Judge Annunziata
Argued by videoconference


SHARON ROBERTSON, ET AL.

MEMORANDUM OPINION[*] BY
v.       Record No. 1801-22-4        JUDGE ROSEMARIE ANNUNZIATA
JUNE 18, 2024

RICKY WES LOY


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Beverly W. Snukals, Judge Designate[1]

Benjamin R. Rand (Blackburn, Conte, Schilling & Click, P.C., on
briefs), for appellants.

E. Stanley Murphy (Murphy Law Offices, PLC, on brief), for
appellee.


This case arises from construction work that Ricky Wes Loy performed on two properties

that appellants, Sharon Robertson and BMW Property, LLC, allege was deficient. This dispute is

part of a constellation of issues arising from Robertson and Loy's divorce. After the divorce was

finalized, the circuit court found that res judicata barred certain claims in the construction suit

because they overlapped with claims that could have been resolved in the divorce proceeding.

Robertson and BMW challenge that decision on appeal. They also argue that the court erred by

dismissing their negligence claims under the economic-loss rule. We affirm the circuit court's

dismissal of appellants' breach of contract and breach of warranty claims but reverse the dismissal

of their negligence claims and remand for further proceedings.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Victoria A.B. Willis sustained the plea in bar as to appellants' negligence claims.
Judge Snukals sustained the plea in bar as to appellants' breach of contract and breach of
warranty claims.

BACKGROUND

I. The parties' relationship and divorce

Loy owned and operated a construction company, while Robertson was the sole and managing member of BMW, a limited liability company based in Fredericksburg.[2] Robertson and Loy began living together in 2011. At the time, Loy owned a mixed residential and commercial property on Harrell Road in Fredericksburg. He later declared bankruptcy, and the property was foreclosed upon. Robertson purchased the property at the foreclosure auction in 2014 and "h[e]ld it in BMW's name" as part of "a calculated plan to allow Loy to retain ownership."

Robertson and Loy executed a premarital agreement in February 2016 and married the next month. The premarital agreement "settle[d the couple's] financial, property and other rights, privileges, obligations and matters with respect to each other arising out of the marital relationship." Pertinent here, the agreement provided that, if the parties divorced, all real property held by BMW would transfer to Loy subject to his ability to refinance that property.[3] In exchange, Loy would reimburse Robertson $350,000 and "pay off or refinance all debt with respect to any asset inherited from" Robertson. Marital property was to "be evenly divided between the parties." The agreement also expressly provided that it would be incorporated into any final divorce decree. Finally, it included a merger clause stating that "there [was] no other agreement, oral or written, existing between" Robertson and Loy and that "[n]o oral statement or prior written matter outside of this Agreement shall have any force or effect."

---

[2] Robertson was also the sole member of another company named BST, LLC, which is not involved in this litigation. Robertson later testified that "BMW is me" and explained that there were no documents showing financial transactions between her and BMW because it would "all be me to me to me."

[3] BMW also owned property in Westmoreland County.

Loy initiated divorce proceedings in March 2019. The trial court conducted a four-day trial and issued a letter opinion in February 2021. The letter opinion identified the issues the court had been asked to determine: (1) the basis for the divorce; (2) the ownership of certain tangible personal property; (3) the meaning of the term "debt" in the premarital agreement; and (4) the parties' legal fees. In resolving those disputes, the trial court summarized some of the parties' testimony. Robertson had testified that she had purchased a house on Chamonix Drive in Fredericksburg in 2015 using her own money and had added Loy to the deed even though he had not paid toward the purchase of the home. She contended that the property should not be classified as marital property because she bought it before the marriage with her own money. Loy responded "that he did work on [Robertson's] other properties without charge as his contribution toward the marital home investment." The court concluded that the Chamonix Drive home was marital property. The court later issued a divorce decree that incorporated the premarital agreement. Robertson appealed, raising six assignments of error. *Robertson v. Loy*, No. 0232-21-4 (Va. Ct. App. Jan. 25, 2022).[4]

In January 2022, this Court affirmed the trial court in part and reversed in part. *Id.*, slip op. at 16. We concluded that the circuit court had miscalculated the amount of debt owed on the BMW property. *Id.* at 13-14. Accordingly, we remanded the matter to the trial court to revise the divorce decree "only to the extent that it must correct the amount of debt on the BMW Property." *Id.* at 16. The parties agree that the circuit court did so, although the amended divorce decree is not part of the record on appeal.

## II. The construction case

In December 2019, while the divorce proceeding was pending, BMW sued Loy and his construction company. The case originally was assigned to the same judge who presided over the

---

[4] "Appellate courts may [take judicial] notice [of] prior proceedings in the same case, and their own records in other cases." *Barnes v. Barnes*, 64 Va. App. 22, 31 (2014).

divorce proceedings. Robertson and BMW filed the operative amended complaint solely against Loy in March 2021.

According to the amended complaint, Robertson and Loy had contracted for Robertson to transfer partial ownership of the Chamonix Drive house to Loy and "Loy agreed to maintain, renovate, repair, and perform . . . construction related services on different properties owned by Robertson and BMW." The complaint asserted that the contract existed "at all relevant times"; Robertson later testified that the contract arose when she and Loy began living together in 2011. Robertson did not buy the Chamonix Drive house until 2015, however, and the sales contract and deed listed Robertson and Loy as co-purchasers. Either way, appellants concede that they entered into the alleged contract before the 2016 premarital agreement.

Loy "repaired multiple decks and performed other construction work on a retention basin" at BMW's Harrell Road property in 2018 and early 2019. He also performed work at the Chamonix Drive home. According to the amended complaint, Robertson "began discovering structural problems at Chamonix Drive" in February 2019, one month before Loy initiated the divorce proceeding. "[S]everal months" later, she discovered problems with the construction work he had performed at Harrell Road. The decks he had repaired subsequently were condemned because he had installed new decks directly on top of the old decks, trapping water between the decks and rotting the structure. He had also "exacerbated" a "moisture issue" in the building's parking garage by cutting the drywall and not replacing it, leading to the spread of black mold. Finally, rather than repair the property's retention basin, Loy had installed drainage that the county government had not approved; that drainage disrupted the soil around the basin, "causing harm to the basin." At Chamonix Drive, Loy "remov[ed] load bearing walls without proper support," which caused the ceiling to sag, the drywall to crack, and upper floors to buckle. He also installed a balcony that rotted because it "was not properly insulated," "improperly drill[ed] through floor joists," which

- 4 -

"creat[ed] further stress on the structural integrity" of the home, "install[ed] plumbing in the attic" that "leak[ed] through the ceiling," and performed other maintenance negligently.

The amended complaint asserted claims for:

- breach of contract and breach of warranty by Robertson and BMW against Loy relating to Harrell Road (Count I and II);

- negligence by BMW against Loy relating to Harrell Road (Count III); and

- breach of contract, breach of warranty, and negligence by Robertson against Loy relating to Chamonix Drive (Counts IV, V, and VI).

Appellants pleaded the negligence claims in the alternative, specifying that those claims would apply only if the circuit court concluded "that no contract exist[ed] between the parties." They alleged that Loy had caused $440,000 in damages for repairs and lost rental income associated with Harrell Road and $150,000 in damages for repairs to Chamonix Drive. According to the amended complaint, BMW was not a party to the contract between Robertson and Loy but was a third-party beneficiary.

Loy filed a plea in bar to the amended complaint. He asserted that res judicata barred appellants' breach of contract and breach of warranty claims because the premarital agreement—which the trial court had incorporated into the final divorce decree—established that the parties had no other contracts between them.[5] He also argued that the economic-loss rule barred appellants' negligence claims.

At a hearing on the plea in bar, the presiding judge commented that the allegations before the court had not been "truly litigated" in the divorce proceeding and that the court "was really under the impression [during the divorce trial] that the parties were in agreement that . . . there were other issues that were to be litigated outside the divorce." The court deferred ruling on the plea in

---

[5] When a court "affirms, ratifies and incorporates" a premarital agreement in a divorce decree, any term in the agreement "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Code § 20-109.1.

bar as to the contract and warranty claims until Robertson's appeal of the divorce decree became final. But the court sustained the plea in bar as to appellants' negligence claims. The court explained in a letter opinion that the economic-loss rule barred appellants from proceeding in tort because Robertson had "contracted for work to be performed" and "alleged nothing more than disappointment with the economic expectations" when Loy failed to perform that work at the "bargained for level of quality."

Following this Court's remand of the divorce appeal and entry of an amended final divorce decree, the circuit court, with a judge designate presiding, revisited Loy's plea in bar on the contract and warranty claims.[6] At the hearing, Loy provided the circuit court with copies of the amended final divorce decree and this Court's opinion in the divorce case but did not move those documents into evidence. The court sustained the plea in bar and dismissed appellants' remaining claims. The court explained that "had this not been governed by the premarital agreement, . . . all of the issues . . . in this lawsuit could have and probably should have been addressed in the divorce court." The court further noted that the issues in this case resembled some of the issues in the divorce proceeding concerning the same property that appellants claimed Loy had damaged. The court explained that the language in the premarital agreement that "there are no other agreements" was "very clear" and that the trial judge had "relied on that [premarital] agreement" when it issued the divorce decree.

The court then stated that it was inclined to dismiss the breach of warranty claims because "there has to be some contract" for there to be an implied warranty. When the court asked the parties to brief that issue, appellants' counsel responded, "I don't need to brief it . . . . [I]f the court has ruled on the contract issue and [Loy's counsel] can send me a case saying that takes care of the

---

[6] The judges of the Circuit Court of Stafford County recused themselves after the first plea-in-bar hearing.

warranty issue, I don't need to spend my client's money briefing that." Loy filed a post-hearing brief; appellants did not. The court then issued the final order sustaining the plea in bar and dismissing the contract and warranty claims.

ANALYSIS

I. Standard of Review

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "The party asserting the plea in bar bears the burden of proof." *Id.* If the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* We review de novo the trial court's "application of the law to the facts." *Ferguson v. Stokes*, 287 Va. 446, 450 (2014).

II. The circuit court erred by dismissing the negligence claims.

The circuit court's letter opinion found that Robertson "contracted for work to be performed" and suffered only economic damages when that work was not performed to the "bargained for level of quality." Thus, relying on *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419 (1988), the circuit court reasoned that appellants could only bring a contract claim; they could not also bring a tort claim. But when the court later sustained Loy's plea in bar as to the contract and negligence claims, it found that the 2016 premarital agreement's provision that "there [was] no other agreement, oral or written" precluded the existence of the alleged contract, whether it arose in 2011 or 2015. The circuit court erred in dismissing appellants' negligence claims because the economic-loss rule did not apply without a contract.

The elements of negligence are "a legal duty, violation of that duty, and proximate causation which results in injury." *Kellermann v. McDonough*, 278 Va. 478, 487 (2009) (quoting *Delk v.*

- 7 -

*Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132 (2000)). "[W]hether a legal duty in tort exists is a pure question of law." *Id.* (citing *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 106 (2001); *Burns v. Johnson*, 250 Va. 41, 45 (1995)). If a duty exists, whether the defendant violated that duty is a factual question. *Id.*

Determining whether appellants pleaded a duty sounding in tort requires analysis of two related concepts: the source-of-duty rule and the economic-loss rule. To determine "whether a cause of action sounds in tort, contract, or both," the court must ascertain "the source of the duty violated." *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 81 (2019) (quoting *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 458 (2017)). "The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." *MCR Fed.*, 294 Va. at 457 (quoting *Filak v. George*, 267 Va. 612, 618 (2004)). Contract law, by contrast, protects "bargained for expectations." *Id.* "[T]o recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Tingler*, 298 Va. at 82 (quoting *MCR Fed.*, 294 Va. at 458).

The economic-loss rule is "a remedy-specific application of the source-of-duty rule." *Id.* at 98. Economic "losses suffered as a result of the breach of a duty *assumed only by agreement*, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak*, 267 Va. at 618 (emphasis added) (citing *Sensenbrenner*, 236 Va. at 425). Thus, "when a plaintiff alleges and proves nothing more than disappointed economic expectations, the law of contracts, not the law of torts, provides the remedy for such economic losses." *Id.* at 618 (collecting cases). Put another way, "a violated duty arising from contract sounds in contract, but a violated duty arising 'irrespective of a contract' sounds in tort." *Nestler v. Scarabelli*, 77 Va. App. 440, 463 (2023) (quoting *S. Wallace Edwards and Sons, Inc. v. Selective Way Ins. Co.*, No. 180902, slip op. at 3 (Va.

Nov. 14, 2019) (order)). "[C]ontract and tort damages may, and often do, overlap" because tort claims allow for a broader range of damages. *Id.* at 464. That is, "contract damages are limited to economic damages, and tort actions *often include such damages*." *Id.* (emphasis added).

A party asserting a claim "may plead alternative facts and theories of recovery" as long as the claims "arise out of the same transaction or occurrence." Code § 8.01-281(A). "A party may also state as many separate claims or defenses as [s]he has regardless of consistency." Rule 1:4(k). "The alternative-pleading model has the virtue of principle by conforming to the traditional view that the complainant is 'the master of the complaint.'" *Hunter v. Hunter*, 298 Va. 414, 429 (2020) (quoting *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)).

Appellants alleged that Loy contracted with Robertson to provide "construction related services" at appellants' properties. When Loy failed to perform the work adequately, appellants allege that they suffered both disappointed economic expectations and property damage. It is undisputed that, if the alleged contract existed, the economic-loss and source-of-duty rules would limit appellants to a contract action. But appellants pleaded in the alternative that, "should there be a finding that no contract exist[ed] between the parties," Loy was still liable for negligence.

The circuit court erred in dismissing appellants' negligence claims because their alternative pleading was valid and the economic-loss rule does not apply unless the duty arose "only by agreement."[7] *Filak*, 267 Va. at 618. *Sensenbrenner* does not suggest otherwise; rather, it explains that "[t]ort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties *assumed only by agreement*." *Sensenbrenner*, 236 Va. at 425 (emphasis added). In *Sensenbrenner*, our Supreme Court applied the economic-loss rule notwithstanding that the parties were not in privity of contract. *Id.* But the plaintiffs in *Sensenbrenner* had suffered

---

[7] Loy argues that "[i]t is not a question of alternative claims; it is a matter of mutually exclusive claims," but Rule 1:4(k) allows plaintiffs to plead separate claims even if those claims are inconsistent.

nothing more than disappointed economic expectations arising from a contract between the plaintiffs and the general contractor who had hired the defendants. *Id.* Thus, a plaintiff who suffers economic damages under an agreement is limited to a contract action against the party with whom they are in privity. But nothing in *Sensenbrenner* suggests that it applies when the duty arose outside of a contract. Here, the circuit court ultimately determined that Robertson and Loy did not have a contract governing Loy's construction and maintenance work on appellants' properties. Consequently, the circuit court erred by sustaining the plea in bar merely because appellants had pleaded the existence of a contract.

Loy asserts that appellants cannot recover in tort for construction work that Loy performed gratuitously. To the contrary, our Supreme Court "has recognized on many occasions that '[i]t is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.'" *Kellermann*, 278 Va. at 490 (alteration in original) (quoting *Nolde Bros. v. Wray*, 221 Va. 25, 28 (1980)). This "ancient learning" goes hand-in-hand with the source-of-duty rule, which distinguishes between nonfeasance, misfeasance, and malfeasance. *Tingler*, 298 Va. at 84. Traditionally, "[t]here is no tort liability for nonfeasance, i.e., for failing to do what one had promised to do in the absence of a duty to act apart from the promise made." *Id.* (alteration in original) (quoting William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 92, at 657 (Dan B. Dobbs et al. eds., 5th ed. 1984)). Misfeasance or malfeasance, by contrast, may give rise to tort liability even when an action is taken gratuitously. *Id.*

*Tingler* is particularly instructive. There, the defendant built the plaintiffs a house according to a construction contract. *Tingler*, 298 Va. at 75. Years later, after the contract had ended, the plaintiffs discovered mold in the house and notified the defendant. *Id.* One of the defendant's employees gratuitously cut a hole in the drywall, removed some moldy insulation, and covered the

hole with a garbage bag. *Id.* at 76. A remediation contractor later informed the plaintiffs that the defendant's "fix" had been performed negligently, and the plaintiffs sued. *Id.* at 76-77. The Court held that the plaintiffs could not recover in tort for the defendant's alleged negligence in weatherproofing the house during the original construction because it would not have been obligated to do so had there not been a contract. *Id.* at 91-93. That is, failure to weatherproof the house was mere nonfeasance at common law. *Id.* Nor could the plaintiffs recover in tort for any damages to the house itself, "which was the object of the contract." *Id.* at 99.

Nonetheless, the Court held the plaintiffs could proceed in tort for damages that the defendant's gratuitous repairs caused the plaintiffs' personal property because the parties had no contract concerning that property. *Id.* at 99-100. Specifically, the plaintiffs in *Tingler* could recover damages to the extent the defendant's "misfeasance during post-construction repairs" caused new damage or worsened preexisting damage, even though the defendant had acted gratuitously in making those repairs. *Id.* (emphasis omitted).

Here, appellants alleged that Loy's negligent construction work caused new damage or worsened preexisting damage at both the Chamonix Drive and Harrell Road properties. For example, they alleged that Loy's work at Harrell Road caused decks to rot, "exacerbated" a moisture issue in the parking garage, promoting the spread of black mold, and eroded soil around the retention basin. As for Chamonix Drive, they alleged that Loy had removed structural support which caused the ceiling to sag, the drywall to crack, and the upper floors to buckle. Those allegations, if proven, would demonstrate that Loy's negligence caused damage that would not have occurred had he not acted at all. In other words, appellants alleged more than the mere failure to do something that was promised. Consequently, they adequately pleaded their negligence claims as alternatives to their breach of contract and breach of warranty claims. The circuit court erred by dismissing those claims.

- 11 -

III.  The circuit court correctly dismissed appellants' breach of contract claims.

"Res judicata involves both issue and claim preclusion."  *Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 654 (2019) (quoting *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142 (2017)). Those two forms of preclusion are "conceptually distinct."  *Lee v. Spoden*, 290 Va. 235, 245 (2015). "Claim preclusion bars 'the assertion of legal or equitable rights of action, *even if they were not specifically resolved* in earlier litigation.'"  *Lane*, 297 Va. at 654 (emphasis added) (quoting *Funny Guy*, 293 Va. at 142).  Claim preclusion may apply "whether or not relitigation of the claim raises the same issues as the earlier suit."  *Lee*, 290 Va. at 245 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).  A party asserting claim preclusion must show that: (1) the prior proceeding resulted in "a final judgment on the merits," (2) the parties were identical or in privity in both proceedings, and (3) "both causes of action ar[ose] out of the same conduct, transaction, or occurrence."  *Lane*, 297 Va. at 654 (citing Rule 1:6(a)).  Claim preclusion bars parties from litigating "the same cause of action, or any part thereof which *could* have been litigated" in the prior action.  *D'Ambrosio v. Wolf*, 295 Va. 48, 54 (2018) (quoting *Bates v. Devers*, 214 Va. 667, 670-71 (1974)).

By contrast, issue preclusion, also known as collateral estoppel, "bars 'successive litigation of an issue of fact or law *actually litigated and resolved* in a valid court determination essential to the prior judgment.'"  *Lee*, 290 Va. at 246 (emphasis added) (quoting *Taylor*, 553 U.S. at 892).  A party asserting issue preclusion must show that: (1) the parties in both proceedings are identical or in privity, (2) "the issue of fact sought to be litigated must have been actually litigated in the prior proceeding," (3) "the issue of fact must have been essential to the prior judgment," and (4) the prior proceeding ended with "a valid, final judgment against the party against whom the doctrine is sought to be applied."  *Lane*, 297 Va. at 654-55 (quoting *Glasco v. Ballard*, 249 Va. 61, 64 (1995)). The critical inquiry for issue preclusion is "the point or question actually litigated and determined in the original action; not what *might* have been thus litigated and determined.'"  *Wolf*, 295 Va. at

- 12 -

56-57 (quoting *Eason v. Eason*, 204 Va. 347, 351 (1963)). "The requirement that an issue must have been the subject of *actual rather than potential litigation* is one of the features distinguishing [issue preclusion] from [claim preclusion]." *Lane*, 297 Va. at 655 (alterations in original) (quoting *Snead v. Bendigo*, 240 Va. 399, 401 (1990)).

Throughout this litigation, the parties have treated claim preclusion and issue preclusion as essentially synonymous, leading the circuit court to remark that the doctrines "all kind of get muddied together sometimes." In explaining why it sustained the plea in bar, the court cited both claim preclusion and issue preclusion principles. For example, the court applied claim preclusion when it found that "all of the issues that [Robertson was] claiming in this lawsuit *could have and probably should have been* addressed in the divorce court." (Emphasis added). On appeal, "we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Here, the best and narrowest ground is that claim preclusion barred appellants' contract claims. Therefore, we do not address whether issue preclusion also barred those claims.[8]

Limiting our review to claim preclusion, the primary issue before this Court is whether the claims in the divorce and construction proceedings arose out of "the same conduct, transaction, or occurrence."[9] Rule 1:6(a). "In determining whether the subsequent action involves the same

---

[8] By focusing on whether their allegations were actually litigated in the divorce proceeding, appellants' assignment of error arguably does not challenge the circuit court's claim preclusion ruling. In "situations in which [a court makes] one or more alternative holdings on an issue," an appellant's "failure to [challenge] one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue." *Neff v. Commonwealth*, 63 Va. App. 413, 416 n.3 (2014) (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005)).

[9] Claim preclusion also requires that the parties in the two proceedings be identical or in privity. *Lane*, 297 Va. at 654-55. Obviously, BMW was not a party to the divorce proceeding. Appellants do not challenge the circuit court's ruling on privity grounds. As for their assertion that the trial court did not issue a final order deciding their contract and warranty claims on the merits, a final decree not only "conclude[s] the parties as to every question actually raised and decided, but [also] as to *every claim which properly belonged to the subject of litigation* and which

conduct, transaction or occurrence, our focus is on whether that action is based on the same or a different cause of action." *Lee*, 290 Va. at 248. We ask "pragmatically" "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage." *Funny Guy*, 293 Va. at 154 (quoting Restatement (Second) of Judgments § 24(2)). "[I]f the underlying dispute produces different legal claims that can be joined in a single suit under the joinder statutes, Rule 1:6 provides that they should be joined unless a judicially-recognized exception to res judicata exists." *Id.* at 150.

We agree with the circuit court that the claims in this case arose out of the same conduct, transaction, or occurrence as claims raised in the divorce proceeding.[10] Matters affecting the value of contested property in a divorce are directly related to the court's ability to issue an equitable divorce decree because "[t]o allow one spouse to squander marital property is to make an equitable award impossible." *Thomas v. Thomas*, 40 Va. App. 639, 645 (2003). Even if Robertson and Loy entered into the alleged contract before they married, the breach of that contract occurred during the marriage and affected both the value and ownership of property that was at the heart of the divorce proceeding. Indeed, according to the trial court's letter opinion in the divorce proceeding, Robertson contested Chamonix Drive's status as marital property because Loy had not paid for it, an argument directly related to the alleged contract in this case. Robertson also "asserted [in the divorce proceeding] the refinance of the Harrell Road Property was to reimburse her for [Loy's] half

---

the parties, by the exercise of reasonable diligence, *might have raised* at that time." *Funny Guy*, 293 Va. at 147 (second emphasis added) (quoting *Smith v. Holland*, 124 Va. 663, 666 (1919)).

[10] "[C]laim preclusion cannot bar a claim that did not accrue prior to the litigation triggering the bar." *Wolf*, 295 Va. at 56. "[A] breach of contract claim generally accrues 'when the breach of contract occurs' and 'not when the resulting damage is discovered.'" *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 155 (2018) (quoting Code § 8.01-230). According to the amended complaint, Loy negligently performed all construction work before the start of the divorce litigation in March 2019.

of the Chamonix Drive home costs." Loy's alleged damage to the Harrell Road property, inflicted shortly before he initiated the divorce, was relevant to the debt issues addressed in the divorce proceeding.

Appellants' only authority supporting their claim that they could not have brought their contract claims in the divorce proceeding is *Wright v. Castles*, 232 Va. 218 (1986). There, the Supreme Court held that a suit filed in equity did not bar the plaintiff from filing a later suit at law about similar conduct because the remedies available in the two suits were different. *Id.* at 222. But the merger of law and equity and the obsolescence of the identical-remedies element the Court applied in *Wright* makes *Wright* inapposite. *See Funny Guy*, 293 Va. at 143-44 & n.10 (citing *Wright* as an historical example of pre-merger law). For example, the Court in *Wright* found it persuasive that the parties were entitled to a jury for their legal claims but not for their equitable ones. *Wright*, 232 Va. at 222. Appellants make a similar assertion, but the current Rules of the Supreme Court allow a party to demand that a jury decide some claims while the court decides others. Rule 3:21(c). Ultimately, nothing in the statutes concerning joinder, divorce, or the circuit court's jurisdiction prohibited appellants from bringing their contract claims in the divorce proceeding.[11] Thus, the circuit court correctly held that Robertson should have raised those claims in that proceeding.

IV. Appellants waived their challenge regarding the breach of warranty claims.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The primary reason for

---

[11] We acknowledge the original judge's comments during the first plea in bar hearing suggesting that she had excluded certain evidence in the divorce proceeding to keep the divorce case and construction case in "separate buckets." To the extent she did so, it does not follow that she would have excluded contract evidence from the divorce case had Robertson asserted her claims in the divorce proceeding rather than filing a separate contract case.

requiring a contemporaneous objection is to allow opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Bethea v. Commonwealth*, 297 Va. 730, 743-44 (2019); *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010); *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

After the trial court found that there was no contract between the parties, appellants essentially conceded that their breach of warranty claims should meet the same fate and declined to brief the issue despite the circuit court's express invitation to do so. To the extent they now argue that the breach of warranty claims could survive absent a contract, they waived that argument by not making it below. Rule 5A:18. Appellants do not invoke any of the exceptions to Rule 5A:18, and we do not raise them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 828 (2023) (citing *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc)). Therefore, we affirm the circuit court's dismissal of appellants' breach of warranty claims.

## CONCLUSION

We affirm the circuit court's order dismissing appellants' breach of contract and breach of warranty claims. We reverse the circuit court's order dismissing appellants' negligence claims under the economic-loss rule and remand for further proceedings.

*Affirmed in part, reversed in part, and remanded.*